**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Michael CALOZZA, Defendant–Appellant.**

**No. 95–30393.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 20, 1996.

Decided Aug. 25, 1997.

**688**

Jo Ann Oliver, Assistant Federal Public Defender, Seattle, WA, for defendant-appellant.

Thomas M. Gannon, United States Department of Justice, Washington, DC, for plaintiff-appellee.

Before: SCHROEDER and KLEINFELD, Circuit Judges, and BREWSTER, District Judge.*

* The Honorable Rudi M. Brewster, United States District Judge, for the Southern District of California, sitting by designation.

Opinion by Judge KLEINFELD; Partial Concurrence and Partial Dissent by Judge BREWSTER.

KLEINFELD, Circuit Judge:

We construe the grouping provisions of the sentencing guidelines, U.S.S.G. §§ 3D1.1, 3D1.4, to determine whether the proper base offense level was selected and whether there was impermissible double counting.

### Facts

Calozza sold insurance for the Sons of Norway to its members. He fabricated a letter purporting to be from the Sons of Norway to staff. The letter offered staff members, but not their clients, an opportunity for a tax-advantaged high-yield secure investment. Then Calozza showed the fake letter to his insurance clients, told them it did not seem fair to deprive them of this opportunity, and offered to help them get into it. His scheme was that his clients would borrow against their insurance and give him their money in exchange for his personal high-interest promissory note. He would supposedly invest the money in the staff opportunity and pass the returns through to his clients, the Sons of Norway members whose money he had taken. Because the fake letter made it look as though the Sons of Norway sought to limit the non-existent investment to staff, Calozza advised his clients to keep his pass-through scheme and their participation secret.

What Calozza was really doing was taking his clients' money, and paying off the earlier investors with the later investors' money. It was a Ponzi scheme. Calozza stole about $8.8 million this way, and paid back about $2.3 million to the more fortunate "investors." He used the profits to pay off his gambling debts and to build his $1.6 million, 6700 square foot house with full gymnasium, swimming pool and tennis court.

After Calozza got caught, he was very cooperative in the criminal process and a related civil action by his victims. He pleaded guilty to eleven counts of mail, wire and

bank fraud under 18 U.S.C. §§ 1341, 1343, 1344, transporting stolen money under 18 U.S.C. § 2314, and money laundering to conceal the scheme under 18 U.S.C. §§ 1956, 1957. He was sentenced November 27, 1995.

The district court imposed a vulnerable victim adjustment under U.S.S.G. § 3A1.1, because most of the victims were retired and elderly. It also imposed an abuse of position of trust enhancement under U.S.S.G. § 3B1.3, because Calozza had known many of his victims for years or decades and had become close to their families as a representative of their fraternal order.

Here is how the district court computed the sentence:

Money Laundering

| guideline | subject | levels |
| --- | --- | --- |
| § 2S1.1(a) | money laundering | 23 |
| § 2S1.1(b)(2) | amount laundered | 6 |
| FIRST SUBTOTAL | | 29 |
| § 3A1.1 | vulnerable victim | 2 |
| § 3B1.3 | abuse of trust | 2 |
| § 3D1.4 | ungrouped fraud | 2 |
| SECOND SUBTOTAL | | 35 |
| § 3E1.1(b) | acceptance of responsibility | −3 |
| TOTAL | | 32 |

Guideline range—121 to 151 months.
Sentence imposed—121 months.

### Analysis

Calozza claims that there was double counting of the vulnerable victim and abuse of position of trust adjustments. We disagree with his argument in one respect, and agree in another. We conclude that the district court did not err in applying the adjustments to both groups when it selected which group was to be the base for the sentence computation. The guidelines enhance the most serious group's level with an adjustment for equally or less serious groups, and the more serious the other groups, the longer the sentence. Counting the same adjustments in the enhancing group and the base group does, as Calozza argues, mistakenly punish him twice for the same conduct.

Calozza also argues that the district court mistakenly concluded that it could not grant him a downward departure, an argument we reject. We need not decide whether grouping the fraud and money laundering counts separately, *cf. United States v. Lopez,* 104

F.3d 1149 (9th Cir.1997); *United States v. Edmonds,* 103 F.3d 822, 826 (9th Cir.1996), or imposing adjustments for vulnerable victim and abuse of position of trust, were appropriate, because those decisions are not challenged in this appeal.

Calozza's sentencing was pursuant to the Guidelines Manual incorporating amendments effective November 1, 1995.

### A. Selecting the highest offense level.

The combined offense level calculation starts with a base, "the offense level applicable to the Group with the highest offense level." U.S.S.G. § 3D1.4. That base is increased by units from other groups with the same or fewer points. *Id.* This is analogous to starting with the most serious crime, and then looking to the equally or less serious crimes to enhance the sentence.

Calozza argues that the district court should have selected the base by applying the vulnerable victim and abuse of position of trust adjustments only to the fraud group, not the money laundering group. That would have made the fraud group the one with the highest offense level, so it would be the base. Calozza's proposed sentence calculation would have worked like this:

Fraud

| guideline | subject | levels |
| --- | --- | --- |
| § 2F1.1(a) | fraud | 6 |
| § 2F1.1(b)(1)(O) | amount of loss | 14 |
| § 2F1.1(b)(2) | more than minimal planning | 2 |
| § 2F1.1(b)(6) | affecting financial inst. | 4 |
| FIRST SUBTOTAL | | 26 |
| § 3A1.1 | vulnerable victim | 2 |
| § 3B1.3 | abuse of trust | 2 |
| § 3D1.4 | ungrouped money laundering | 2 |
| SECOND SUBTOTAL | | 32 |
| § 3E1.1(b) | acceptance of responsibility | −3 |
| TOTAL | | 29 |

Guideline range—87—108 months.

■ The principles in the grouping guidelines are that (1) counts involving substantially the same harm are grouped together, to prevent prosecutors from enhancing sentences by multiplying charges for substantially the same harm; (2) the group with the highest offense level, that is, the worst crimes, furnishes a base; (3) additional crimes add units to the base, so that punish-

ment will be greater for those who commit more crimes.

The rules in this Part seek to provide incremental punishment for significant additional criminal conduct. The most serious offense is used as the starting point. The other counts determine how much to increase the offense level.

. . .

In order to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct, this Part provides rules for grouping offenses together. Convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines. In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines.

U.S.S.G. Ch. 3, Pt. D, intro. comment. The Sentencing Commission wrote its grouping provisions "with an eye toward eliminating unfair treatment that might result from count manipulation." U.S.S.G. Ch. 1, Pt. A, § 4(a).

■ The rule for choosing which group furnishes the base is to use "the offense level applicable to the Group with the highest offense level." U.S.S.G. § 3D1.4. If adjustments such as vulnerable victim and abuse of position of trust apply to all groups, it does not matter whether they are added to all the alternatives, or not added to any of them, in making this comparison. If × is greater than y, then × plus 4 is greater than y plus 4. But if the adjustments could properly be added only to one and not the other, then it could matter a great deal. It may be that × is greater than y, but less than y plus 4. For the judge to have erred in a way that affected Calozza's sentence, Calozza would have to show that the adjustments were only appropriate for fraud, not for money laundering.

In that contention, he is incorrect. The adjustments could properly be applied to both groups to determine which had the highest offense level. Defrauding victims of more than $5 million yields a base offense level of 20, raised to 26 for "more than minimal planning" and "affected a financial institution." U.S.S.G. §§ 2F1.1(b)(1)(O), (b)(2)(A), and (b)(6)(B). Money laundering more than $2 million (that this is the correct amount for the money laundering computation has not put at issue by the parties) yields a base offense level of 29. U.S.S.G. § 2S1.1. If the four level adjustment for vulnerable victim and abuse of position of trust can properly be added to both, yielding 30 and 33, money laundering remains the group with the highest level.

Calozza argues that fraud rather than money laundering should have been used as the base, because the vulnerable victim and abuse of position of trust adjustments should have been considered only with respect to fraud. The reason is that the elderly and infirm Sons of Norway members who were the vulnerable victims, and his abuse of trust relative to them, do not relate to money laundering, a crime in which the victim is the government. This argument would give the fraud group an offense level of 30, but leave money laundering at 29.

Our precedents require us to reject Calozza's argument. In *United States v. Duran*, 15 F.3d 131, 134 (9th Cir.1994), a deputy sheriff was accused of stealing money seized from drug dealers and structuring financial transactions, but convicted only of structuring. The question on appeal was whether the structuring sentence could be enhanced for abuse of a position of trust. The crooked deputy sheriff had abused his position of trust only with respect to theft, of which he had not been convicted; his law enforcement position had no bearing on his ability to structure financial transactions. We held that the enhancement applied nevertheless, because the district court could properly consider "relevant conduct other than that involved in the offense of conviction," as defined in U.S.S.G. § 1B1.3(a). *Id.* at 133.

In *United States v. Haggard*, 41 F.3d 1320 (9th Cir.1994), the criminal had falsely claimed to know the whereabouts of a kidnapped child, and led the FBI on a wild goose chase. He was sentenced for obstructing justice, a crime against the government, but his sentence was enhanced by a vulnera-

ble victim adjustment, treating the child's mother rather than the government as the victim. We held that even though the federal government, not the mother, was the victim of the crime Haggard was convicted of, the district court "properly may look beyond the four corners of the charge" and may consider "all harm" caused by relevant conduct under U.S.S.G. § 1B1.3(a)(3).

■ Under *Duran* and *Haggard*, the test of whether such adjustments as vulnerable victim and abuse of position of trust can be applied is whether they are "relevant conduct" as defined by the guidelines, not whether they apply to the victim or the criminal's position with respect to the crime to which the adjustments are being applied. The district court properly applied the adjustments to Calozza's money laundering group because his abuse of a position of trust with respect to his aged and infirm clients was "relevant conduct" under U.S.S.G. § 1B1.3 with respect to Calozza's money laundering. Relevant conduct is "all acts ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a).

Calozza argues that the guidelines limit relevant conduct for grouped offenses to those relevant to the crime of conviction, which would be money laundering:

> ... the base offense level ... and ... adjustments ... shall be determined ... (2) solely with respect to offenses of a character for which section 3D1.2(d) would require grouping of multiple counts, all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction.

U.S.S.G. § 1B1.3(a). This provision enhances a sentence if a drug dealer sells drugs on multiple occasions as part of a common scheme, but is convicted of only one of the sales. *Id.* at applic. note 3. It protects a defendant against enhancement for drug sales not part of the same course of conduct or common scheme or plan. It does not protect against enhancement of a group for acts which were part of the same course of conduct as the offense of conviction, but were not part of that offense. Calozza's abuse of his position of trust harming vulnerable Sons of Norway members was part of the same course of conduct as his money laundering, so the limitation does not protect him against the adjustments.

Calozza's argument implies an absurd result. Suppose a cocaine dealer, trying to avoid arrest, shoots at a police officer. Calozza's argument would imply that because his drug crimes are groupable, his sentence cannot be enhanced for shooting at the officer. A straightforward reading of the quoted guideline section implies the contrary, and so does common sense. This does not turn the "solely ... offense of conviction" language into surplusage. It would protect the cocaine dealer from enhancement for a marijuana sale which was not part of the course of conduct leading to his conviction.

B. Double counting.

■ Calozza also argues that the district court's computation amounted to double counting of the vulnerable victim and abuse of position of trust adjustments. Impermissible double counting of an enhancement occurs if a guideline provision is used to increase punishment on account of a kind of harm already fully accounted for, though not when the same course of conduct results in two different types of harm or wrongs at two different times. *United States v. Alexander,* 48 F.3d 1477, 1492–93 (9th Cir.1995). Thus where multiple victims were already accounted for in a grouped fraud offense, the vulnerable victim adjustment could be applied only once for all, not once for each victim (two levels total, not two levels for each victim). *United States v. Caterino,* 957 F.2d 681 (9th Cir.1992).

The Fifth Circuit has held that impermissible double counting occurred where an official victim adjustment was applied both to assault and to grouped marijuana counts. *United States v. Kleinebreil,* 966 F.2d 945, 954–55 (5th Cir.1992). We are persuaded that Calozza is correct in his double counting argument, and our decisions in *Alexander* and *Caterino* are consistent with *Kleinebreil.*

The grouping scheme protects against prosecutorial sentence manipulation, by treating together multiple charges involving substantially the same harm. Together with the relevant conduct provisions, the grouping scheme protects the public from sentences inadequate to reflect different kinds of harm by adding levels for counts not involving substantially the same harm based on a system of "units." U.S.S.G. § 3D1.2, 3D1.4. One unit is assigned to the most serious group's total for a group not involving substantially the same harm (fraud as opposed to money laundering in this case) if the additional group is equally serious or one to four levels less serious. U.S.S.G. § 3D1.4(a). Only one-half unit is assigned for groups five to eight levels less serious. U.S.S.G. § 3D1.4(b). The units translate into additional offense levels. U.S.S.G. § 3D1.4. Once the vulnerable victim and abuse of position of trust enhancements were added to the money laundering group, the offense level was 33. The fraud group was 26 without these adjustments, 30 with them. Thus, the fraud group was three levels less serious with the adjustments, but seven less serious without them. If adding the adjustments to the fraud group was a mistake, then Calozza's sentence computation should have been 108 to 135 months instead of 121–151.

Calozza's abuse of his position of trust and the vulnerability of his victims was "a kind of harm ... already fully accounted for," *Alexander*, 48 F.3d at 1492, in the money laundering group. It seems a bit odd to add adjustments for these offense characteristics only to the money laundering group, where they have no direct bearing, and not the fraud group, to which they apply more directly. But we have explained above why they were properly treated as relevant conduct for the money laundering group under our precedents. The point we are considering now is whether the same factors which enhanced the money laundering counts should also enhance the fraud counts. They should not, because the wrong and its victims were the same. Calozza abused his position of trust, harming vulnerable victims, in his fraudulent conduct, not his money laundering, but because these aggravating factors were relevant conduct, they enhanced the money laundering sentence.

When the abuse of trust and vulnerable victim adjustments were added to both groups for purposes of selecting which yielded the "highest offense level" and should be the base, under U.S.S.G. § 3D1.4, the only effect was to reject the fraud group for that purpose and to select the money laundering group. They did not enhance the fraud group's effect on the sentence, because that group's computation was not used as the base. But now that units are being added for the fraud group, under U.S.S.G. § 3D1.4(a) and (b), the effect is to add prison time twice for exactly the same abuse of trust and vulnerable victims.[1]

---

1. We have carefully considered the points raised by our dissenting colleague, but cannot agree. The dissent says our opinion "overrules *Haggard* and *Duran* by deleting relevant conduct enhancements." That accusation is not well founded.

The point in the dissent which has given us pause is that we have failed to follow the direction in application instruction (d) of U.S.S.G. § 1B1.1, that "[i]f there are multiple counts of conviction, repeat steps (a) through (c) for each count." Step (c) says to apply adjustments such as the vulnerable victim and abuse of position of trust adjustments at issue in this case. The dissent says that our holding prohibits the district judge from doing what 1B1.1(d) requires.

The reason we reject our colleague's position is that application of U.S.S.G. § 1B1.1(d) as he construes it is inconsistent with circuit precedent. *United States v. Alexander*, 48 F.3d 1477, 1492 (9th Cir.1995) says that constitutionally impermissible double counting occurs only when a part of the guidelines "is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." 48 F.3d at 1492. That is what happened here. Calozza abused one position of trust, to take advantage of one group of vulnerable victims one way. The enhancements for those aggravating factors were applied to his money laundering counts, even though the enhancements applied to his fraud rather than his money laundering conduct. That was proper under *Haggard* and *Duran*. Once the enhancements were applied to the money laundering counts, Calozza's punishment on account of the kind of harm he did by abusing a position of trust to cheat vulnerable victims out of their money was fully accounted for. The dissent draws the erroneous inference that if so, then fraud and money laundering cannot both take account of a higher amount of money than the base level. The inference is incorrect because in that example, the amount affects the

Arguably, the fraud and money laundering offenses should have been grouped together. *See United States v. Rose,* 20 F.3d 367, 371–72 (9th Cir.1994); *United States v. Mullens,* 65 F.3d 1560, 1564–65 (11th Cir.1995); *United States v. Leonard,* 61 F.3d 1181, 1186–87 (5th Cir.1995). Had the fraud and money laundering counts been grouped together, the double counting issues raised in this appeal would have disappeared. Because both sides contended before the district court that they should not be grouped, we express no opinion as to whether the crimes should have been grouped.

The guideline ranges for the correct and the mistaken sentence computations over-lapped—108 to 135 months and 121 to 151. While the district judge could still have given Calozza the same 121–month sentence, we cannot tell whether he would have. The judge's remarks at sentencing suggest the possibility that he might have exercised his discretion to sentence Calozza at the bottom of the guideline range, whatever it turned out to be. We do not know, therefore, whether the computation error was harmless—it might have added 13 months to Calozza's sentence. To enable the district judge to exercise his discretion after correcting the unit calculation, we remand for resentencing.

## C. Downward Departure.

■ Calozza argues that the district court abused its discretion in not departing downward for "extraordinary acceptance of responsibility." The court found that the degree of cooperation was "very profound and valuable" and had "aided the prosecution greatly."

■ The district court's discretionary refusal to depart downward from the Guidelines is not reviewable on appeal. *United States v. Bauer,* 84 F.3d 1549, 1562 (9th Cir.1996). Calozza argues that the district judge in this case mistakenly concluded that

the law prohibited departure for extraordinary acceptance of responsibility where restitution was not made, and suggests that this amounts to discrimination against the indigent, since Calozza was unlikely ever to have $8.8 million with which to repay his victims. We can review for abuse of discretion, under *Koon v. United States,* —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), where the district court "indicates that it believes that it lacks the authority to depart." *United States v. Eyler,* 67 F.3d 1386, 1390 n. 5 (9th Cir.1995).

We have studied the sentencing transcript, and conclude that the judge made a discretionary decision not to depart, not a legal decision that he could not depart. The judge said "[t]he guidelines permit departures from the guideline range in unusual cases for particular reasons, and one reason that can apply is extraordinary acceptance of responsibility." The judge then decided that such a departure should not be made "in this case." He thought using the bottom end of the 121–151 range was a sufficient benefit for Calozza's conduct after he was caught.

Defense counsel has argued, very capably, that there should be a downward departure in this case based on exceptional acceptance of responsibility. The guidelines permit downward departures from the guideline range in unusual cases for particular reasons, and one reason that can apply is extraordinary acceptance of responsibility.

I do not believe that adjustment should be made in this case. I do not believe there should be a downward departure, in other words, in this case.

Mr. Calozza has done a full job of accepting responsibility and has been given the three-point credit for that. He has not been in a position to make restitution himself, and I do not think that the require-

crime twice, first when the person steals the money, and again when he hides it. By contrast, the vulnerability of the victims and abuse of position of trust only affected the crime once, when Calozza defrauded his victims. The Eleventh Circuit authority the dissent cites, *United States v. Wimbush,* 103 F.3d 968 (11th Cir.1997), and *United States v. Wyckoff,* 918 F.2d 925 (11th

Cir.1990), are inapposite. Both hold that, in a felon in possession of a firearm case, it is permissible to count the same felony both as a predicate for the crime and also as part of the criminal history, because these uses "embody distinctly separate notions relating to sentencing." *Wyckoff,* 918 F.2d at 927. The enhancements in the case at bar do not.

ments of that downward departure are met in this instance.

The judge was not required to treat restitution as though it had been made, just because Calozza had stolen so much that he could not repay it even using his best efforts.

VACATED and REMANDED.

BREWSTER, District Judge, concurring in part and dissenting in part:

I concur in the affirmance of the refusal by the district court to depart downward; I respectfully dissent from that portion of the majority opinion which holds that the district court's guidelines calculation amounted to impermissible double counting. The district court's sentence is in strict and literal compliance with the Guidelines Manual and should be affirmed. Unfortunately, the majority decision today injects a virus into the Guidelines Manual for every case which involves multiple count groups by repealing and rewriting the guidelines structure for the handling of relevant conduct enhancements in multiple group sentencing. In addition, the majority also *sub silentio* overrules established Ninth Circuit authority which applies relevant conduct enhancements for this type of conduct, and creates inconsistency with Ninth and other Circuit authority in analogous relevant conduct situations.

The majority opinion is based on a court-created legislative policy decision concerning the extent to which sentences for multiple counts should be treated concurrently or consecutively. The statutory guidelines scheme has set that legislative policy without any ambiguity. The court should not repeal it and judicially enact a new sentencing procedure in the absence of a constitutional violation, which is not claimed here.

## I. *AN AGREED POINT OF BEGINNING*

It is without dispute that this case involves pleas of guilty to eleven counts which group into two separate Groups of Closely Related Counts, U.S.S.G. § 3D1.4 Comment n. 1 (hereinafter "count groups"), Fraud (Counts 1, 2, 3, 4, 5, 6, 7, 8 and 9) grouped together under § 2F1.1, and Money Laundering (Counts 10 and 11) grouped together under § 1S1.1.[1] Because these two count groups do not involve substantially the same harm, they are treated as separate count groups, and the offense levels are calculated under the rules set forth in Chapter 3, Part D of the Guidelines Manual entitled "Multiple Counts."[2] *See* U.S.S.G. § 3D1.2(d).

---

1. Once similar counts are grouped together pursuant to § 3D1.2 each group is thereafter treated as if the group were one count.

2. The majority notes in passing that "[a]rguably, the fraud and money laundering offenses should have been grouped together." The Presentence Report did recommend grouping all eleven counts of conviction under § 3D1.2(d). The district court, the defendant and the government were all in agreement that this was improper and that the counts properly grouped into two separate Groups of Closely Related Counts. *See United States v. Taylor*, 984 F.2d 298, 303 (9th Cir. 1993) (grouping inappropriate when the guidelines measure harm differently); *United States v. Johnson*, 971 F.2d 562 (10th Cir.1992) (refusing to group fraud counts with money laundering counts because the harm falls on different groups of victims); *but see United States v. Rose*, 20 F.3d 367 (9th Cir.1994) (allowing grouping because monies involved in fraud and money laundering did not merely overlap, but were interchangeable). In this case, while there is some overlap between the money defrauded and laundered, the amounts are not interchangeable. The district court was correct that the money laundering

counts should not be grouped with the fraud counts in this case. The majority agrees with this, and I concur.

However, if all counts were grouped together, it would result in a lower offense level and a lower sentence than that advocated by the majority. U.S.S.G. § 3D1.3(b) provides that

In the case of counts grouped together pursuant to § 3D1.2(d), the offense level applicable to a Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two and Parts A, B and C of Chapter Three. When counts involve offenses of the same general type to which different guidelines apply (e.g. theft and fraud), apply the offense guideline that produces the highest offense level.

In the instant case, the analysis would be the same as explained above, yielding a fraud offense level of 30 and a money laundering offense level of 33. Since money laundering has the highest offense level, it becomes the offense level for the group. The fraud offense level is ignored from this point forward in the sentence calculation. The money laundering offense level (33) is then reduced for acceptance of responsibility (–3) and the final offense level is 30. This produces a

Also without dispute, the majority carefully analyzes the question whether the enhancements for vulnerable victim and abuse of trust are relevant conduct for each count group, and concludes, correctly, that they are. *See* U.S.S.G. § 1B1.3(a); *United States v. Haggard,* 41 F.3d 1320 (9th Cir.1994); *United States v. Duran,* 15 F.3d 131 (9th Cir.1994).

The agreement ends at this point because the majority, after carefully justifying the Chapter Three relevant conduct enhancements for each separate count group, then turns around and deletes those enhancements from one of the two count groups in the name of "double counting," which the majority equates to unfairly punishing the defendant twice. The *de facto* effect of that deletion is to reverse the inclusion process authorized by *Haggard* and *Duran,* as well as to repeal and re-write step (d) of § 1B1.1 of the guidelines manual. It is this portion of the majority opinion on which this dissent is focused.

## II. *THE STATUTORY SCHEME*

The methodology for calculating a sentence is set out in § 1B1.1 of the Guidelines Manual.[3] It is clearly drafted without ambiguity, and if followed will demonstrate the correctness of the sentence imposed by the district court.

Step (a) instructs the court to determine the applicable offense guideline section from Chapter Two for each group by consulting the Statutory Index (Appendix A) of the Guidelines Manual. In this case, for the fraud group, that offense guideline section is § 2F1.1; for the money laundering group it is § 2S1.1.

Step (b) instructs the court to determine the base offense level and apply any appropriate specific offense characteristics con-

---

guideline range of 97–121 months. Compare this with the majority's calculation which results in a final offense level of 31 and a guideline range of 108–135 months.

The difference results from the application of § 3D1.4. Due to the application of the combined offense level calculation for multiple groups, one additional offense level is added in the majority's calculation. This raises the combined offense level to 34, which is then reduced by three levels for acceptance of responsibility to 31, and results in a guideline range of 108–135 months.

If the majority believes that all counts should be grouped, then they should use the proper sentence calculation and defendant's total offense level would be 30. The district court's conclusion that the counts group into two separate count groups is an issue of law which we review de novo. If the district court was incorrect, even if the issue was not raised by defendant, we have a duty to correct the error. Instead of deciding that all counts properly group together, or that the counts are properly grouped into two separate count groups, the majority creates a hybrid of the two. The majority rejects the application of the Chapter 3 adjustments to the fraud group while using it to adjust the money laundering offense level to calculate the combined offense level. This produces an offense level of 31, one level below the level for two separate groups, and one level above the level for a single group. While a decision either to group all counts together, or to group the counts into two separate groups might be defensible, the majority's hybridization has no basis in the guidelines and is indefensible.

3. § 1B1.1 *Application Instructions*
    (a) Determine the applicable guideline section from Chapter Two. *See* § 1B1.2 (Applicable Guidelines). The Statutory Index (Appendix A) provides a listing to assist in this determination.
    (b) Determine the base offense level and apply any appropriate specific offense characteristics contained in the particular guideline in Chapter Two in the order listed.
    (c) Apply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter 3.
    (d) If there are multiple counts of conviction, repeat steps (a) through (c) for each count. Apply Part D of Chapter Three to group the various counts and adjust the offense level accordingly.
    (e) Apply the adjustment as appropriate for the defendant's acceptance of responsibility from Part E of Chapter Three.
    (f) Determine the defendant's criminal history category as specified in Part A of Chapter Four. Determine from Part B of Chapter Four any other applicable adjustments.
    (g) Determine the guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category determined above.
    (h) For the particular guideline range, determine from Parts B through G of Chapter Five the sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution.
    (I) Refer to Parts H and K of Chapter Five, Specific Offender Characteristics and Departures, and to any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence.

**696**

tained in the particular offense guideline. In this case, those values are as follows for each count group:

### FRAUD (§ 2F1.1)

| | |
|---|---|
| (a) Base Offense Level | 6 |
| (b) Specific Offense Characteristics | |
| (1) Amount of Loss ($8.8 million) | +14 |
| (2) More than Minimal Planning | +2 |
| (6) Affected a financial institution and defendant derived more than $1 million | +4 |
| SUM at conclusion of Step (b) of § 1B1.1. | 26 |

### MONEY LAUNDERING (§ 2S1.1)

| | |
|---|---|
| (a) Base Offense Level (convicted Under 18 U.S.C. § 1956(a)(1)(A)(i)) | 23 |
| (b) Specific Offense Characteristics | |
| (2) Amount laundered (Over $2.3 million) | +6 |
| SUM at conclusion of step (b) of § 1B1.1 | 29 |

Step (c) instructs the court to apply the adjustments as appropriate related to victim, role, etc., from *Parts A, B and C of Chapter Three*. It is significant to note that these adjustments, if justified by the relevant conduct, are to be applied to *each* of the count groups being calculated in this case, and the majority apparently agrees with this step. Applying Step (c) will produce the following additional adjustments for each of the two groups described above:

### CHAPTER THREE, PARTS A, B & C

| Sum (carried forward from Step (b) above) | Fraud (§ 2F1.1) 26 | Money Laundering (§ 2S1.1) 29 |
|---|---|---|
| Part A (§ 3A1.1(b)) (Vulnerable victim) | +2 | +2 |
| Part B (§ 3B1.3) (Abuse of position of trust) | +2 | +2 |
| Part C—Obstruction (not applicable to either group). | | |
| Offense Level *each group* | 30 | 33 |

4. *See* discussion, *supra,* footnote 2.

5. § 3D1.4. *Determining the Combined Offense Level*

The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:

| Number of Units | Increase in Offense Level |
|---|---|
| 1 | none |
| 1 | 1/2 add 1 level |

Step (d) instructs the court to perform steps (a), (b), and (c) for each count (which has been calculated immediately above for the two groups in this case). Then step (d) instructs the court to apply *Part D of Chapter Three* to group the counts (which has been done above) and adjust the offense level for multiple count groups.

Looking at Part D of Chapter Three, § 3D1.1(a)(1) instructs the court to group related counts into separate groups. There is no dispute in this case that this procedure correctly produces two groups, each composed of closely related counts.[4] *See* § 3D1.2(d). That produced the fraud group and the money laundering group above. Then, pursuant to § 3D1.1(a)(2), the court determines the offense level applicable to *each count group* in accordance with § 3D1.3(b). This instruction expressly defines the offense level applicable to each count group as "the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two and Parts A, B and C of Chapter Three." That has been done above as to each count group, and it produced an offense level for the fraud group of 30, and for the money laundering group of 33.

The last procedure set out in Part D of Chapter Three is § 3D1.4, determining the combined offense level for the two count groups above. This is the step which the majority repeals in this decision. That section instructs the court to select the "group with the highest offense level" and then to increase that count group's offense level by the number of levels set forth in the table in § 3D1.4. The step-by-step procedure is spelled out in subsections (a), (b) and (c) of § 3D1.4.[5]

| | |
|---|---|
| 2 | add 2 levels |
| 2 1/2—3 | add 3 levels |
| 3 1/2—5 | add 4 levels |
| More than 5 | add 5 levels |

In determining the number of Units for purposes of this section:

(a) Count as one Unit the Group with the highest offense level. Count one additional Unit for each Group that is equally serious or from 1 to 4 levels less serious.

(b) Count as one-half unit any Group that is 5 to 8 levels less serious than the Group with the highest offense level.

Under subsection (a), one unit is counted for the count group which has the highest offense level (money laundering). Then one unit is counted for any count group that is equally serious or from 1 to 4 offense levels less serious than the count group with the highest offense level. In our case the fraud group is 3 levels lower, hence, one unit is counted. Subsections (b) and (c) are obviously not pertinent to this case.

As a result, 2 units are counted, and in accordance with the table of § 3D1.4, 2 offense levels are added to the count group with the highest offense level. Thus, 2 levels are added to the money laundering group, producing the combined offense level for the case at 35.

Thus, step (d) is clear that when separate count groups are compared under § 3D1.4, they are compared after all specific offense characteristics for each Chapter Two offense group and all Chapter Three adjustments, which are relevant conduct for each count group, have been made. As discussed in Section III below, the majority refuses to follow this instruction.

Step (e) of § 1B1.1 then instructs the court to adjust the combined offense level for the defendant's acceptance of responsibility in accordance with Part E of Chapter Three. In this case, that reduces the combined offense level by 3 levels, resulting in a total offense level of 32.

Step (f) of § 1B1.1 instructs the court to determine criminal history and any other criminal history adjustments. Without dispute, Calozza has a Criminal History Category of I and no other Chapter Four adjustments are indicated.

Step (g) of § 1B1.1 instructs the court to determine the guideline range from the sentencing table Chapter Five, Part A. That table produces a guideline range of 121–151 months when entered with the combined total offense level of 32 on the vertical axis and

(c) Disregard any Group that is 9 or more levels less serious than the Group with the highest offense level. Such Groups will not increase the applicable offense level but may provide a reason for sentencing at the higher

a Criminal History Category of I on the horizontal.

Steps (g) and (h) are *not* in issue in this case, hence the above step-by-step procedure completes the guidelines manual instruction for determining Calozza's sentence. The district court found the guideline range was 121–151 months and sentenced Calozza to 121 months, the bottom of the range. The district court correctly applied the sentencing guidelines.

### III. *THE FOCUS OF THE DISSENT*

I agree with the majority holding that the district court correctly applied the Chapter Three adjustments of vulnerable victim and abuse of position of trust to each of the separate count groups en route to determining which group would have the highest offense level. I also agree with the majority statement that "the guidelines enhance the most serious group's level with an adjustment for … less serious groups." But then, inexplicably and without any statutory or decisional authority, the majority states, "[c]ounting the same adjustments in the enhancing group and the base group does, as Calozza argues, mistakenly punish him twice for the same conduct." This is the point where I submit the majority opinion: (1) repeals a portion of the Guidelines Manual without any basis in precedent or logic, and without even asserting any constitutional justification for repealing the statute; and (2) *de facto* overrules *Haggard* and *Duran* by deleting relevant conduct enhancements which those cases held to be proper.

### A. The Majority's Sentence Calculation

The majority decision would rewrite step (d) of § 1B1.1 by requiring the district court to delete the Chapter Three relevant conduct adjustments from the lesser group if they are contained in the greater group, before applying the adjustments for multiple groups under § 3D1.4. If this were done, the fraud group would drop to 26, which is 7 levels below the money laundering group.[6]

end of the sentencing range for the applicable offense level.

6. It is ironic that the vulnerable victim and abuse of position of trust enhancements, which are most directly related to Calozza's fraudulent con-

At this point the majority would appear to re-enter the Guidelines Manual at the step (d) stage where the multiple count adjustment is calculated pursuant to § 3D1.4, as set out in footnote 5 above. Now, 1 unit is counted for the money laundering group (per § 3D1.4(a)), and 1/2 unit is counted for the 7–level difference between the groups (per § 3D1.4(b)). According to the table, 1 1/2 units translates to one offense level, which, when added to the money laundering count, makes the new total offense level 34 instead of 35. After adjustment for acceptance of responsibility, the guideline range would be 108–135 instead of 121–151.

### B. The Flaw in the Majority's Opinion

The majority's decision to compare the highest group after Chapter Three adjustments are made, with the lesser group after the Chapter Three adjustments have been made *and then deleted* is in direct contravention to the explicit procedures set out in § 1B1.1, step (d). The majority's asserted basis is that otherwise Calozza is "mistakenly punish[ed] twice for the same conduct." The simple fact that there may be some double counting in Calozza's sentence does not render it invalid. Double counting is permissible when intended by Congress in enacting the Guidelines, and when it does not violate the Constitution. "Thus, there is nothing wrong with 'double counting' when it is necessary to make defendant's sentence reflect the full extent of the wrongfulness of his conduct." *United States v. Reese,* 2 F.3d 870, 895 (9th Cir.1993), *cert. denied,* 510 U.S. 1094, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994); *see also United States v. Starr,* 971 F.2d 357,

361 (9th Cir.1992) ("multiple uses of a particular aspect of a defendant's past behavior are proper where each invocation of the particular behavior serves a unique purpose under the Guidelines"); *United States v. Adeleke,* 968 F.2d 1159, 1161 (11th Cir.1992) ("Double counting a factor during sentencing is permissible if the Sentencing Commission intended the result, and if the result is permissible because 'each section concerns conceptually separate notions relating to sentencing.'"); *United States v. Campbell,* 967 F.2d 20, 25 (2nd Cir.1992) ("double counting is legitimate where a single act is relevant to two different dimensions of the Guidelines analysis").

The majority decision today is also inconsistent with other circuit authority in analogous relevant conduct situations. For example, the Eleventh Circuit approved the use of prior felonies to simultaneously increase the offense level and to calculate the criminal history category of the defendant. *United States v. Wimbush,* 103 F.3d 968 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 1859, 137 L.Ed.2d 1060 (1997); *United States v. Wyckoff,* 918 F.2d 925 (11th Cir.1990). As another example, the sentencing judge is free to include as relevant conduct facts which were necessarily rejected by the jury in the trial. *United States v. Sherpa,* 97 F.3d 1239, 1244 (9th Cir.1996), *amended,* 110 F.3d 656 (9th Cir.1996). The Ninth Circuit has approved the use of a single aspect of conduct both to determine the applicable offense guideline and to increase the base level offense. *Reese,* 2 F.3d at 895–96. Obviously, relevant conduct often finds application in more than one place in the sentencing pro-

---

duct, are deleted from the fraud group but left intact in the money laundering group! The majority decision somewhat dignifies this argument by conceding, "It seems a bit odd to add adjustments for these offense characteristics only to the money laundering group, where they have no direct bearing, and not the fraud group, to which they apply more directly."

If that seems too illogical to tolerate, one might suggest, as does Calozza, deleting the two enhancements from the money laundering group instead. If that were done, would it be done after adding all Chapter Two and Chapter Three adjustments to the base offense level? If so, then the majority decision would produce a total of 30 for the fraud group, and 29 for the money laun-

dering group. Now the group with the highest offense level is the fraud group with 30. Adding two levels for the multiple group adjustments brings the new total to 32. Subtract 3 levels for acceptance of responsibility and the total offense level produced is 29. The guideline range for Calozza would then be 87–108 months.

But the majority appears to leave all adjustments from Chapter Two and Three in the aggregate at the time of selecting the group with the highest offense level, because they selected money laundering with 33 levels. Then ironically, they would *delete* the four levels for vulnerable victim and abuse of position of trust from the *fraud* group.

cess. It is not a grounds to refuse to follow explicit guidelines instructions. *See Adeleke,* 968 F.2d at 1161 (double counting permissible if the Sentencing Commission intended the result, and if each use of the conduct concerns conceptually separate notions relating to sentencing).

## C. The Cases Relied Upon by the Majority Are Inapposite

The majority appears to base its holding on two Ninth Circuit and one Fifth Circuit opinion, none of which deal with the type of sentence enhancements at issue in this case.

The majority relies on *United States v. Alexander,* 48 F.3d 1477, 1492–93 (9th Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 210, 133 L.Ed.2d 142 (1995), but that decision *found no double counting* despite the fact that the district court applied three different Chapter Two specific offense characteristics enhancements as well as two Chapter Three victim-related enhancements to a single count of robbery.[7] The instant case involves the same relevant conduct enhancement to two separate count groups en route to the point where only one .of them will be selected as the "base" count group with the highest offense level. At that point, the lesser count group's function will be solely to add an incremental multiple count enhancement of 2 levels to the "base" count group.

If anything, there is a better argument for double counting in *Alexander* than in the instant case. The enhancements for discharge of a firearm during a robbery, assault on a law enforcement officer, and reckless endangerment of others were all based on the same conduct. All three of these enhancements were based on the fact that defendants had fired a gun at police while attempting to flee. *Alexander,* 48 F.3d at 1482. The addition of all three of these enhancements added twelve levels to Alexander's sentence. In the instant case, Calozza's actions in defrauding vulnerable victims and abusing a position of trust were only "double counted" to the extent that the adjusted fraud group added two levels to the money laundering group in the combined offense level calculation.

Moreover, the dicta in *Alexander* regarding what constitutes double counting would not apply to the instant case. The court stated that

> double counting occurs only when "one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines."

*Id.* at 1492; *see United States v. Reese,* 2 F.3d at 895.[8] This occurs, for instance, when a Chapter Two specific offense adjustment accounts for the same conduct as a Chapter Three victim-related adjustment, and both adjustments cannot be applied to enhance the same offense.[9] This is not the situation

---

**7.** Specifically, the court imposed the following Chapter Two and Chapter Three enhancements:

(1) †2 for robbery from a financial institution (§ 2B3.1(b)(1));
(2) †2 for robbery resulting in monetary loss over $250,000 (§ 2B3.1(b), (6)(D));
(3) †7 for (6)(D); discharge of firearm during commission of robbery, (§ 2B3.1(b)(2)(A));
(4) †3 for assault on law enforcement officer, (§ 3A1.2(b));
(5) †2 for reckless endangerment of others, (§ 3C1.2).

**8.** In *Alexander,* the Ninth Circuit relies on *Reese* for its statement of the law regarding double counting. In *Reese,* the Ninth Circuit *found no double counting* when the district court used the fact that defendant had used a dangerous weapon on both to determine that the base offense level was aggravated assault (rather than minor assault), and to enhance defendant's sentence for use of "a dangerous weapon with intent to do

bodily harm" pursuant to U.S.S.G. § 2A2.2. The court stated that

> There is, of course, such a thing as impermissible double counting. It occurs where one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by the application of another part of the Guidelines. In practical terms, this means that impermissible double counting is to be found where one Guidelines provision "is akin to a 'lesser included offense' of another," yet both are applied.

*Reese,* 2 F.3d at 895. There is no such relationship in the instant case.

**9.** For example, § 2B3.1(b)(4) provides a specific offense adjustment of two levels to the base offense level for robbery when a victim is physically restrained. Section 3A1.3 provides a Chapter Three victim related adjustment for when a vic-

in the instant case. In this case, we have the *same* two Chapter 3 adjustments which are proper relevant conduct enhancements to two separate count groups. Since we are not dealing with a situation where two different guideline provisions enhance a defendant's sentence for the same conduct, *Alexander* is inapposite.

The majority also appears to ground its decision on *United States v. Caterino*, 957 F.2d 681 (9th Cir.), *cert. denied,* 506 U.S. 843, 113 S.Ct. 129, 121 L.Ed.2d 83 (1992), but that case is totally inapplicable to this case. In *Caterino,* the three counts of conviction were grouped together into one count group for sentencing purposes, pursuant to the Guidelines Manual. There, the district court added *two* 2–level enhancements for vulnerable victims under § 3A1.1(b) to that single group because within that group were the two grouped counts of fraud where the defendant had defrauded two vulnerable victims. Clearly, it was error to double count the § 3A1.1 vulnerable victim adjustment *in the same group,* and to do so violated the specific instruction of the Manual. That is not what happened here and *Caterino* is inapposite. In the instant case, the Guidelines Manual specifically instructs the court to calculate each separate count group as if it stood alone, pursuant to § 1B1.1. The majority correctly recognizes that the vulnerable victim and the abuse of position of trust adjustments are proper enhancements for each separate count group in this case. Having recognized that, somehow the majority suddenly reverses direction, finds double counting, and deletes the relevant conduct from the fraud group.

Finally, the majority claims support from the case of *United States v. Kleinebreil,* 966 F.2d 945, 954–55 (5th Cir.1992),[10] but this case is irrelevant to the case before us. In

*Kleinebreil,* the defendant was convicted of conspiracy to possess marijuana with intent to distribute (Count 1), possession of marijuana with intent to distribute (Count 2), and assault on a federal officer (Count 3). Counts 1 and 2 grouped because they were "closely related," but Count 3 was separate because it was not "closely related" to the marijuana counts. The court: (1) reversed the 3–level enhancement of the marijuana group for the official victim adjustment of § 3A1.2; (2) reversed the 3–level enhancement of the assault count for the supervisory role adjustment of § 3B1.1(b); (3) affirmed the enhancement of the assault count for the official victim adjustment of § 3A1.2; and (4) affirmed the enhancement of the marijuana group for supervisory role. All of these rulings were based on whether the adjustments were relevant conduct to the count group. The Court held that an official victim enhancement was not relevant conduct in the marijuana group (though it was in the assault count), and a supervisory role enhancement was not relevant conduct in the assault count (though it was in the marijuana group). In the instant case, the majority concedes that both adjustments in issue are relevant conduct in each group, which distinguishes *Kleinebreil.*

None of these cases, *Kleinebreil, Alexander,* or *Caterino,* discusses the posture of the instant case, and they certainly do not support the majority's decision. The majority has cited no case in which the district court followed the explicit procedures set out in the Guidelines Manual and was reversed for "impermissible double counting." This will be the first.

**D. The Implications of the Majority Opinion**

If the majority's conclusion were correct that any form of "double counting" is imper-

---

tim is physically restrained. These are two different adjustments in different parts of the Guidelines, and if both were applied to one offense, it would constitute double counting. The Application Notes to § 3A1.3 provide that this victim related adjustment should not be applied "where the offense guideline specifically incorporates this factor[.]" This demonstrates that Congress recognized that this type of double counting might occur and specifically provided in the Guidelines that courts were not to impose both adjustments. The Guidelines application at issue

in our case is not similarly restricted by the manual.

**10.** In *Kleinebreil* the defendant supervised a drug conspiracy of five or more persons. Agents came to his home in the early morning with an arrest warrant based on defendant's drug trafficking conduct. Defendant and his wife were alone in the house, in bed. During the arrest, an officer was shot by the defendant.

missible, even when intended by Congress, it would have far reaching effects. For instance, the majority's reasoning would also require them to delete a portion of the Chapter Two specific offense characteristics adjustment regarding the amount of money involved, as to one of the groups. For the fraud group, § 2F1.1(b) enhances the base offense level of 6 by 14 levels because the amount of money defrauded exceeded $8.8 million. But in the money laundering group, § 2S1.1(b) enhances the base offense level of 23 by 6 levels because the amount laundered was $2.3 million. Obviously, the $2.3 million laundered is a portion of the same money involved in the fraud. Should we then deduct $2.3 million from one of the count groups to avoid double counting? If so, should we decide which count group is the greater one by comparing them at the point of base offense level, or at the conclusion of step (b) of § 1B1.1? A decision to deduct $2.3 million from the fraud group would leave the same 14 point enhancement, and the majority's concern about double counting the amount of $2.3 million would be unsolved. But if $2.3 million were deducted from the money laundering group, that would reduce the specific offense characteristic to *zero* money laundered, and would lower the total of step (b) to 23. At this point we would have a money laundering group with no money laundered!

Notice that if the majority would compare the groups at the base offense level, money laundering is the bigger group (23 to 6); but if compared at the conclusion of Step (b), the fraud group is greater (26 to 23). All of this manipulation is specifically contrary to explicit procedures of the Guidelines Manual, as is the manipulation ordered by the majority in the Chapter Three adjustments.

In fact, the majority's position, pushed to its outer limit, arguably might justify deleting the money laundering group entirely, because all of the money laundered by Calozza was obtained through the fraudulent scheme, and under the majority rationale, to charge Calozza with money laundering at all is "punishing him twice for the same conduct." But the majority does not urge either of these two extensions of their ruling.

## IV. *CONCLUSION*

Before the guidelines statute was enacted, a sentencing judge had the discretion to sentence a defendant to the statutory maximum on each count of conviction, to be served consecutively. In this case, that could theoretically have totaled 115 years or 1380 months. Or, on the other hand, the sentencing judge could have put the defendant on probation for all the counts of conviction.

Congress could have set up a guidelines statute and manual which would have instructed the courts to sentence all counts of conviction consecutively, concurrently, or somewhere in between. It is apparent that in enacting the Sentencing Guidelines, Congress elected to favor concurrent sentencing. In the present case, the statutory scheme for multiple count group sentencing reduces the impact of the lesser group on the total sentence from 30 offense levels to 2. Instead of serving a 70–87 month sentence for the fraud group consecutively with a 97–121 month sentence for the money laundering group, Calozza was sentenced to one 121–151 month sentence.[11] In electing to emphasize concurrent sentencing, Congress has set up a procedure which requires recognition of all relevant conduct appropriate for each group, even if it is also appropriate for other groups as well. Nowhere does Congress instruct courts to delete relevant conduct previously added where multiple counts are involved.

Congress has the constitutional power to make laws which may to some extent punish an offender for conduct which offends more than one criminal statute. If that is to be labeled "double counting," that does not

---

11. These two sentences would result if the defendant were sentenced separately on each count group with the two sentences running consecutively. The total offense level for the fraud group is 30 minus 3 levels for acceptance of responsibility. This results in final offense level of 27 for which Calozza's Guideline Range would be 70–87 months. The total offense level for the money laundering group is 33 minus 3 levels for acceptance of responsibility. This results in a final offense level of 30 for which Calozza's Guideline Range would be 97–121 months.

thereby make it unjust or unconstitutional.[12] The "double counting" at issue in this case is mandated by the Sentencing Guidelines. The majority should defer to this legislative prerogative and follow the explicit procedures of the guidelines in this case.

I respectfully dissent from the portion of the majority opinion which holds the district court committed impermissible double counting. I submit that the district court should be affirmed in all respects.

---

12. The majority cites *Alexander* for the proposition that "*constitutionally* impermissible double counting occurs only when a part of the guidelines 'is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by another part of the Guidelines.'" (emphasis added). As explained above, *Alexander* is inapposite because in that case the court did not find any double counting, and because the type of double counting they were concerned with is when two different Guideline provisions punish a defendant for the same conduct. Moreover, the *Alexander* holding does not have any constitutional dimensions. The *Alexander* court mentions that defendants challenged the sentence enhancements as "unconstitutionally duplicative," but neither in the court's statement of the law nor in its holding does it state that double counting of any kind is constitutionally impermissible. *Alexander*, 48 F.3d at 1492–93.