UNITED STATES of America, Plaintiff–Appellee,

v.

**Roy Lee STARKS, aka Tweet, Defendant–Appellant.**

**No. 00–50025.**

**D.C. No. CR–99–00545–GHK–01.**

United States Court of Appeals, Ninth Circuit.

Submitted July 10, 2001 *.

Decided July 20, 2001.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.

R.App. P. 34(a)(2)

**532**

Before NOONAN, SILVERMAN, and PAEZ, Circuit Judges.

### MEMORANDUM **

Roy Lee Starks appeals his conviction and sentence on one count of transporting a minor in interstate commerce with the intent that she engage in prostitution, a violation of 18 U.S.C. § 2423(a). We affirm.

The victim in this case was a thirteen-year-old girl who lived in an apartment with her mother in Mesa, Arizona. Since she is a juvenile, she will be referred to by the initials "J.S." throughout this disposition. J.S. met Starks through a mutual friend. Starks talked to J.S. about prostitution and told her that his girlfriend, Annfelise Walker, had worked for him as a prostitute. On May 8, 1999, J.S. had an argument with her mother. She left her mother's apartment and spent the night with Starks. Starks invited J.S. to remain with him, telling her that he would provide her with food, clothing and shelter. Starks said that he wanted to go to Hollywood, and J.S. agreed to go with him.

Starks told J.S. that she could make a lot of money as a prostitute. He also instructed her on various prostitution techniques and said that he wished Walker were there to teach J.S. about prostitution. The following day, Starks took J.S. to a storage unit where Walker's clothes were kept and allowed J.S. to choose the clothes she wanted. The two left for Hollywood that evening.

On the way to California, Starks gave J.S. further instruction on prostitution and told her how much she should charge for particular sex acts. Starks stopped at various truck stops and sent J.S. to look for customers, but she found none. Starks and J.S. arrived in Hollywood on May 11. J.S. began working as a prostitute. She had two customers and gave the money she earned to Starks.

At 6:00 p.m. on May 11, Starks' car was pulled over for speeding. J.S. was in the car with Starks. She told the police officers her name and age and said that Starks had kidnapped her and forced her to work as a prostitute. Later, J.S. admitted that she had not been kidnapped but that she had lied to protect herself. Starks was arrested for kidnapping and taken to the police station. J.S. then handed one of the officers some cocaine that Starks had asked her to hide. She told the officer that Starks had shown her a gun, which might still be in the car. J.S. also informed the officer that there was marijuana in the car. The officer impounded the vehicle.

After Starks was indicted, a magistrate issued a warrant for Starks' car authorizing a search for evidence of prostitution. The search yielded various incriminating items. The district court denied Starks' motion to suppress this evidence.

Starks was tried before a jury. Walker testified that she and Starks were involved romantically and that she had also traveled with him to various states, where she had worked for him as a prostitute. She explained how she had recruited a young woman named Sarah Forsythe–Medina to work for Starks as a prostitute, and that

---

** The disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

Starks had taken Forsythe–Medina to Hollywood. The district court ruled that this evidence was admissible under Federal Rule of Evidence 404(b).

The jury returned a guilty verdict on September 3, 1999. Starks was sentenced to 104 months of imprisonment. The sentence included a two-level upward departure imposed because Starks had twice committed statutory rape of J.S.

## I. Prior Acts Evidence

Starks contends that the district court should have excluded evidence that he had been a pimp for Walker and Forsythe–Medina. Rule 404(b) prohibits admitting evidence of prior bad acts to show the defendant's criminal propensity. *See United States v. Johnson,* 132 F.3d 1279, 1282 (9th Cir.1997). Evidence of prior bad acts is admissible to prove intent. *See United States v. Sneezer,* 983 F.2d 920, 924 (9th Cir.1992). Intent is an element of the offense. The government had to prove that the defendant transported the minor with the specific intent that she engage in prostitution. Starks' conduct with Walker and Forsythe–Medina was sufficiently similar to his treatment of J.S. to constitute evidence of his intent that J.S. engage in prostitution. *See Johnson,* 132 F.3d at 1282; *United States v. Hadley,* 918 F.2d 848, 850–52 (9th Cir.1990); *United States v. Winters,* 729 F.2d 602, 604 (9th Cir. 1984). The evidence was properly admitted.

## II. The Search of Starks' Car

Starks appeals the denial of his motion to suppress. Both the seizure of his car and the subsequent search were lawful. The automobile exception to the warrant requirement allows law enforcement officers to search a vehicle if they have probable cause to believe that it contains contraband. *See United States v. Ross,* 456 U.S. 798, 807–08, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The information

J.S. gave the police after they approached Starks' car gave them probable cause for the search. *See United States v. Henderson,* 241 F.3d 638, 648 (9th Cir. 2000).

The fact that the officers searched the car after they had seized it has no impact on the admissibility of the evidence found. When law enforcement officers have probable cause to search a car, "[t]his authority d[oes] not evanesce simply because the officers decide[ ] to impound the car and search it later." *Id.* at 649; *see also Kendrick v. Nelson,* 448 F.2d 25, 28 (9th Cir.1971) ("For constitutional purposes, there is no difference between ... seizing and holding an automobile before presenting the probable cause issue to a magistrate and ... carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."). The district court did not err in denying Starks' motion to suppress.

## III. Sentencing Issues

Both of Starks' challenges to the district court's upward departure fail. First, as Starks concedes in his reply brief, there was no *Apprendi* error because *Apprendi* does not apply where a defendant's sentence is below the statutory maximum. *See Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *United States v. Egge,* 223 F.3d 1128, 1131 n. 1 (9th Cir.2000).

Second, the two-level upward departure for Starks' statutory rape of J.S. did not constitute double counting. Impermissible double counting results when "one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by the application of another part of the Guidelines." *United States v. Reese,* 2 F.3d 870, 895 (9th Cir.

1993). There is no double counting when punishment is increased to account for two different types of harm resulting from the same course of conduct. *See United States v. Calozza,* 125 F.3d 687, 691 (9th Cir.1997). Starks' statutory rape of J.S. was a harm distinct from that of promoting prostitution.

Starks' conviction and sentence are AF-FIRMED.