UNITED STATES of America,
Plaintiff–Appellee,

v.

Allen Rea TAYLOR, Defendant–
Appellant.

No. 91–30418.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1992.

Decided Jan. 21, 1993.

Terrence Kellogg, Asst. Federal Public Defender, Seattle, WA, for defendant-appellant.

Robert H. Westinghouse, Asst. U.S. Atty., Seattle, WA, for plaintiff-appellee.

Before: WRIGHT, HUG, and POOLE, Circuit Judges.

POOLE, Circuit Judge:

Allen Rea Taylor appeals his sentence under the United States Sentencing Guidelines, following his conviction on a guilty plea, for one count of engaging in a monetary transaction in property derived from specified unlawful activity in violation of 18 U.S.C. §§ 1957 and 982. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm in part and vacate and remand in part for resentencing.

## I

In August 1990, Taylor, doing business as Westco Trading Company ("Westco"), agreed to sell 400 cellular telephones to Wangrow Company, Ltd. ("Wangrow"), a Taiwan business, for $360,000. As payment for the telephones, in September 1990 two Taiwan banks issued two letters of credit in favor of Westco in the amount of $219,600 and $140,400, payable upon shipment of the telephones.

On September 12, 1990, Taylor shipped six crates, purportedly containing the telephones, to Wangrow. When the crates arrived in Taiwan, Wangrow discovered that they contained bricks.

After confirmation of the shipments was sent, but before the crates arrived in Taiwan, the letters of credit were paid into a Security Pacific Bank checking account under the name of "Suds and Service." Taylor was the sole authorized signer on the account.

Taylor subsequently transferred $219,600 by wire from the bank account to a brokerage account at Piper, Jaffray & Hopwood, Inc. in Chicago. He used the rest of the money to purchase a home in Oregon which he later sold. Taylor spent all of the proceeds from the fraudulent telephone sale.

The government charged Taylor with one count of wire fraud in violation of 18 U.S.C. § 1343 (Count I), one count of money laundering in violation of 18 U.S.C. §§ 1956(a)(2)(A), 2, and 982 (Count II), and one count of engaging in a monetary transaction in property derived from specified unlawful activity in violation of 18 U.S.C. §§ 1957 and 982 (Count III). Taylor pleaded guilty to Count III of the indictment based on the wire transfer of $219,600 to the Piper, Jaffray account, and the government moved to dismiss Counts I and II. At sentencing, the district court found that Taylor had an offense level of 20 and a criminal history category of VI, resulting in an applicable Guidelines range of 70 to 87 months. On November 14, 1991, the court sentenced Taylor to 81 months imprisonment, three years supervised release, $360,000 restitution as a condition of supervised release, and a $50 assessment. This appeal followed.

## II

■ Taylor first contends that the district court erred by treating his two prior state criminal sentences as separate, rather than related, sentences for purposes of calculating his criminal history category under U.S.S.G. § 4A1.2(a)(2). He argues that

because he received concurrent sentences on the two prior state convictions, they should be considered "consolidated for sentencing" and thus related under U.S.S.G. § 4A1.2(a)(2) for purposes of calculating his criminal history category. This contention is meritless.

■ Whether two prior offenses are related under section 4A1.2 is a mixed question of law and fact that we review de novo. *United States v. Chapnick*, 963 F.2d 224, 226 (9th Cir.1992). We review for clear error any findings of fact that underlie the district court's sentencing decision. *Id.*

Under section 4A1.2(a)(2), "[p]rior sentences imposed in related cases are to be treated as one sentence" for purposes of calculating a defendant's criminal history. The commentary to section 4A1.2 provides that "[p]rior sentences are considered related if they ... (3) were consolidated for ... sentencing." U.S.S.G. § 4A1.2, comment. (n. 3).

■ This court must apply the commentary to Guidelines sections unless it is inconsistent with the text of the Guidelines. *See, e.g., United States v. Bachiero*, 969 F.2d 733, 734 (9th Cir.1992) (per curiam). There is no inconsistency between note 3 and the text of Section 4A1.2(a)(2). *Id.*

Here, Taylor pleaded guilty in February 1983 in Texas state court to theft by deception and was sentenced to three years imprisonment. The crime took place in August 1981, and involved the submission of a credit application with false information. In July 1983, Taylor pleaded guilty in Arizona state court to attempted theft and was sentenced to one and one-half years to run concurrently with the Texas sentence. The Arizona crime took place in September 1980, and involved the submission of a false insurance claim.

This court has not "definitively established a rule for determining whether cases have been 'consolidated' for purposes of § 4A1.2." *Chapnick*, 963 F.2d at 228. Under Ninth Circuit case law, however, Taylor's crimes were not "consolidated."

In *United States v. Davis*, this court held that imposition of concurrent sentences did not establish consolidation when the defendant was sentenced in separate courts under separate docket numbers for separate offenses pursuant to a single plea agreement. 922 F.2d 1385, 1390–91 (9th Cir. 1991). The *Davis* court noted that the result would not change even if the defendant had been sentenced on the same day. *Id.* at 1390. The court suggested that concurrent sentences might indicate consolidation if the sentencing court considered that the offenses were somehow related. *See id.* at 1391; *see also United States v. Smith*, 905 F.2d 1296, 1303 (9th Cir.1990) (receipt of concurrent sentences for violation of probation on separate burglary and car theft convictions does not indicate consolidation); *cf. Chapnick*, 963 F.2d at 228–29 (order transferring a burglary case for sentencing with another burglary case plus imposition of identical concurrent sentences constituted "consolidation for sentencing").

Taylor's crimes were completely unrelated. Thus, unlike *Chapnick*, there is nothing to suggest that the Arizona sentencing judge considered the offenses related. *See* 963 F.2d at 228–29. Under *Davis* and *Smith*, the two offenses were not "consolidated for sentencing" merely because the Arizona court imposed a sentence concurrent to the Texas sentence. *See Davis*, 922 F.2d at 1390–91; *Smith*, 905 F.2d at 1303.

### III

■ Taylor next contends that the district court erred by determining that wire fraud was a permissible basis for increasing his base offense level under U.S.S.G. § 2S1.2(b)(1)(B). We disagree.

Whether the district court properly applied section 2S1.2(b)(1)(B) is a mixed question of law and fact that we review de novo. *See United States v. Restrepo*, 884 F.2d 1294, 1295 (9th Cir.1989). We review for clear error any factual findings underlying the district court's sentencing decision. *Chapnick*, 963 F.2d at 226.

Under section 2S1.2(b)(1)(B), a defendant's base offense level is increased by two levels "[i]f the defendant knew that

the funds were the proceeds of: ... (B) any other specified unlawful activity (*see* 18 U.S.C. § 1956(c)(7) [setting forth offenses that constitute "specified unlawful activity"])." Here, the district court increased Taylor's base offense level by two levels based on the "specified unlawful activity" of wire fraud.

Taylor argues that wire fraud was not a "specified unlawful activity" in the version of 18 U.S.C. § 1956(c)(7) that was in effect at the time he committed the offense. In support of his argument, he cites 18 U.S.C. § 1956(c)(7)(D), which was amended after the date of his offense to add the following to the list of specified unlawful activities: "section 1341 (relating to mail fraud) and section 1343 (relating to wire fraud) affecting a financial institution." *Id.; see* Historical and Statutory Notes foll. 18 U.S.C. § 1956 (West Supp.1992) (language added by the Crime Control Act of 1990). He contends that because section 1956(c)(7)(D) was amended to include these offenses, the offenses necessarily were not included in the pre-amendment version of section 1956(c)(7)(D).

Under 18 U.S.C. § 1956(c)(7)(A), however, "specified unlawful activity" includes "any act or activity constituting an offense listed in [18 U.S.C.] section 1961(1)." Section 1961(1) defines those offenses that may rise to the level of a violation under section 1962 of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and includes the offenses of mail fraud and wire fraud. Because section 1961(1)'s offenses, as incorporated into section 1956(c)(7), include the offense of wire fraud, the district court properly increased Taylor's base offense level based on wire fraud.

Taylor nevertheless contends that section 1961(1) encompasses only offenses criminally punishable as RICO violations. He argues that if Congress intended to include any offense listed in section 1961(1), rather than those offenses only to the extent that they are punishable as RICO violations, then it would not have amended section 1956(c)(7)(D) to include wire fraud as a specified unlawful activity.

Section 1956(c)(7)(A), however, does not explicitly require a full RICO violation, as defined in 18 U.S.C. § 1962. If Congress had wanted to limit the offenses to those punishable as a RICO violation, it could have cited to section 1962 rather than only to section 1961(1), which merely lists the offenses that could rise to the level of a RICO violation under section 1962. *See United States v. 16899 S.W. Greenbrier*, 774 F.Supp. 1267, 1273–74 (D.Or.1991) (applying this analysis and holding that section 1956(a)(7)(A) encompasses mail and wire fraud).

The plain language of the statute compels the conclusion that section 1961(1)'s offenses are incorporated into section 1956(c)(7). *See United States v. Dadanian*, 818 F.2d 1443, 1448 (9th Cir.1987) (criminal statutes are construed narrowly; court looks first to the statute's language and then to the legislative history; plain meaning of statute controls absent clear legislative intent to the contrary), *modified on other grounds*, 856 F.2d 1391 (9th Cir. 1988). Section 1956(c)(7), a definitions statute, specifically incorporates the offenses in section 1961(1), another definitions statute, in the definition of "unlawful specified activity." Nothing in section 1956(c)(7) limits the incorporation of section 1961(1) offenses to those rising to the level of a RICO violation.

Our conclusion is bolstered by pending legislation that strikes the language regarding mail and wire fraud from section 1956(c)(7)(D). *See* H.R. 26, 102nd Cong., 1st Sess., sec. 25 (1991). The committee report for the bill states in pertinent part:

In adding a reference to mail and wire fraud "affecting a financial institution," some have argued that Congress intended to narrow the scope of section 1956(c)(7).

The argument is made that since section 1956(a)(7)(A) includes all offenses that are predicate offenses under 18 U.S.C. § 1961(1), and that section already includes mail and wire fraud as predicate offenses without limitation, the enumeration of mail and wire frauds "affecting a financial institution" implies that ...

non-financial institution-related mail or wire fraud is not covered.

Such an interpretation is incorrect. The purpose [of the amendment] ... was to highlight that mail and wire frauds "affecting a financial institution" was [sic] covered under section 1956(c)(7). In order to remove any confusion that the provision implied a limitation under 18 U.S.C. § 1956(c)(7)(A), the Committee is removing the highlighting reference. Similarly, the amendment removes other redundant references to offenses already covered by section 1956(c)(7)(A).

H.R.Rep. No. 28, 102nd Cong., 1st Sess. (1991). This language supports our conclusion that section 1956(c)(7)(A) incorporates the offenses listed in section 1961(1) and does not limit the 1961(1) offenses to those rising to the level of a RICO violation under section 1962.[1]

Taylor also argues that Application Note 1 to section 2S1.2(b)(1)(B) suggests that a section 1961(1) offense is a "specified unlawful activity" only if it is a RICO violation under section 1962.

Application Note 1 provides in pertinent part that " '[s]pecified unlawful activity' is defined in 18 U.S.C. § 1956(c)(7) to include racketeering offenses (18 U.S.C. § 1961(1)), drug offenses, and most other serious federal crimes."

Taylor argues that this language is ambiguous and should be construed as including only activities prohibited under section 1962. This commentary, however, is only a summary of how "specified unlawful activity" is defined under the statute. It is not inconsistent with our conclusion that section 1956(c)(7)(A) does not limit the incorporation of section 1961(1) offenses to those rising to the level of a RICO violation under section 1962.

Accordingly, we affirm the district court's increase of Taylor's base offense level under U.S.S.G. § 2S1.2(b)(1)(B) by two levels based on the "specified unlawful activity" of wire fraud.

## IV

■ Taylor contends that the district court erred by using the entire amount of the funds of his fraudulent scheme ($360,-000) in calculating his offense level. Instead, he argues, the district court should have used $219,600, the amount that was transferred to the Piper, Jaffrey account and that was the basis for his guilty plea to Count III of the indictment. We review the district court's calculation for plain error because Taylor did not object to the error in district court. *See United States v. Lopez–Cavasos*, 915 F.2d 474, 475 (9th Cir.1990). We vacate the sentence and remand for resentencing because, as the government concedes, the district court improperly calculated the base offense level by using amounts attributable to the dismissed wire fraud count as relevant conduct under U.S.S.G. §§ 1B1.3(a)(2) and 3D1.2(d).

The district court calculated Taylor's offense level under U.S.S.G. § 2S1.2(b)(2), which provides that if the value of the funds exceeds $100,000, then the offense level is increased as specified in the table set forth in U.S.S.G. § 2S1.1(b)(2). Section 2S1.1(b)(2) provides for a two-level increase if the value of the funds exceeds $200,000 and a three-level increase if the value of the funds exceeds $350,000.

The district court used the entire amount of the fraudulent scheme, or $360,000, in calculating Taylor's base offense level. $219,600 of this amount was attributable to the wire transfer to the Piper, Jaffray account that formed the basis for Taylor's plea to Count III of the indictment. The balance was attributable to funds that formed the basis for the dismissed wire fraud count.

The district court added these funds together under the authority of U.S.S.G. §§ 1B1.3(a)(2) and 3D1.2(d). Section 1B1.3(a)(2), the relevant conduct guideline, provides that if the sentencing guideline

---

1. The government also argues that Congress added "mail and wire fraud affecting a financial institution" to section 1956(c)(7)(D) as part of "the wholesale increase in applicable penalties for bank-fraud related offenses" under the Crime Control Act of 1990. This argument is persuasive, especially in light of the committee report.

**303**

specifies more than one base offense level and if grouping of offenses is required under U.S.S.G. § 3D1.2(d), then the offense level "must be determined by 'all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Fine*, 975 F.2d 596, 599 (9th Cir.1992) (en banc) (quoting U.S.S.G. § 1B1.3(a)(2)). In calculating the base offense level, the district court thus assumed that funds attributable to the wire fraud count should be grouped with the funds attributable to Count III under section 3D1.2(d), the grouping guideline.

Section 3D1.2(d) provides that counts shall be grouped "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm." Section 3D1.2(d) requires grouping "when the measurement of harm from one offense is essentially equivalent to the measurement of harm for other related offenses." *United States v. Johnson*, 971 F.2d 562, 576 (10th Cir.1992); *see* U.S.S.G. Ch. 1, Pt. A, intro. comment. at 8 ("when the conduct involves fungible items (*e.g.*, separate drug transactions or thefts of money), the amounts are added and the guidelines apply to the total amount").

Accordingly, to determine whether grouping of Taylor's offenses was appropriate under section 3D1.2(d), we must examine the sentencing guidelines for the offenses to determine whether the measurement of harm in those guidelines is "essentially equivalent."

Taylor pleaded guilty to one count of engaging in a monetary transaction in property derived from specified unlawful activity. Under section 2S1.2, the relevant sentencing guideline, the offense level is determined based on "the value of the funds" attributable to the scheme.

The district court used amounts attributable to the dismissed wire fraud count as relevant conduct. Under section 2F1.1, the wire fraud guideline, the offense level is determined based on "the loss" attributable to the scheme.

We join the Tenth Circuit in holding that grouping under section 3D1.2(d) is not appropriate when the guidelines measure harm differently. *See Johnson*, 971 F.2d at 576. Here, as in *Johnson*, the guidelines for wire fraud and money laundering measure harm differently. Thus, as the government concedes, the dismissed wire fraud count cannot be grouped with the monetary transaction count under section 3D1.2(d). Accordingly, funds attributable to the dismissed wire fraud count are not relevant conduct under section 1B1.3(a)(2).[2]

We vacate Taylor's sentence and remand to the district court for resentencing based only on the $219,600 wire transfer that formed the basis for his plea to Count III. Based on our holding, Taylor now has an offense level of 19 and a criminal history category of VI, which results in an applicable Guidelines range of 63 to 78 months.

AFFIRMED in part, VACATED in part, and REMANDED.

---

**2.** In Count II of the indictment, Taylor was charged with money laundering in the amount of $360,000. Section 3D1.2(d) requires grouping of the offenses of money laundering (U.S.S.G. § 2S1.2) and engaging in a monetary transaction in property derived from specified unlawful activity (U.S.S.G. § 2S1.1). Ordinarily, under section 3D1.2(d), the "total value of the harm" from the two counts would be $360,000 ($219,600 from Count III and the excess $140,400 attributable to Count II). This normally would provide a sufficient basis for the district court's utilization of the entire $360,000 in calculating the base offense level under section 1B1.3(a)(2), the relevant conduct guideline.

The government conceded at oral argument, however, that the total value of the harm attributable to the money laundering and monetary transaction counts was less than $350,000. Thus, any excess funds attributable to the dismissed money laundering count would not be sufficient to support the district court's three-level increase under section 2S1.1(b)(2). *See* U.S.S.G. § 2S1.1(b)(2) (providing for two-level increase if the value of the funds exceeds $200,000 and a three-level increase if the value of the funds exceeds $350,000). Accordingly, Count II does not provide a basis for affirming the district court's sentence calculation.