UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Louis SYRAX, aka Bob
Johnson, aka Robert L. Syrax,
Defendant–Appellant.

No. 99–50753.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 2000

Filed Dec. 13, 2000

Ellyn Marcus Lindsay, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Korey House, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Before: TASHIMA and TALLMAN, Circuit Judges, and ALSUP, District Judge.*

TASHIMA, Circuit Judge:

Robert Louis Syrax appeals the sentence imposed by the district court following his guilty pleas to one count each of violations of mail fraud, wire fraud, interstate transportation of property obtained by fraud, and money laundering. Syrax contends that the district court erred in failing to group his fraud and money laundering counts for sentencing, and in imposing a two-level enhancement for his role in the offense. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Syrax created a telemarketing business called Gecko Holdings, Inc., for the purpose of telephoning people throughout the United States, soliciting investments in Gecko. Syrax and his telemarketers falsely told victims that Gecko was an "Internet gambling company" about to make a stock offering on the NASDAQ exchange, and that they would receive large returns from their investments. Gecko telemarketers made numerous other false claims, eventually inducing victims to send Gecko over $4.5 million. Approximately $1.78 million

---

* The Honorable William Alsup, United States District Judge for the Northern District of California, sitting by designation.

of the funds was reinvested into the scheme. After learning he was being investigated by law enforcement, Syrax and his wife emptied Gecko's bank accounts, drove to Las Vegas, and were eventually arrested in Florida.

Syrax was charged in a 25–count indictment and a one-count information with violations of 18 U.S.C. § 1341, mail fraud, 18 U.S.C. § 1343, wire fraud, 18 U.S.C. § 1956(a)(1)(A)(i), money laundering, 18 U.S.C. § 2314, interstate transportation of property obtained by fraud, and 18 U.S.C. § 2326, which provides for enhanced penalties for telemarketing. Syrax pled guilty to one count each of mail fraud, wire fraud, money laundering, and interstate transportation of property obtained by fraud. The district court sentenced Syrax to 97 months' imprisonment, based on an offense level of 29, a criminal history category of II, and a guideline range of 97–121 months.[1] Syrax timely appeals his sentence.

## DISCUSSION

### I. Grouping Under U.S.S.G. § 3D1.2

■■ Syrax contends that the district court erred by failing to group his fraud and money laundering counts as a single group under U.S.S.G. § 3D1.2(b) or (d). The district court's refusal to group offenses under the guidelines is subject to de novo review. *See United States v. Hanley*, 190 F.3d 1017, 1033 (9th Cir.1999).

Section 3D1.2 provides in part that:

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

．　　．　　．　　．　　．

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objec-

tive or constituting part of a common scheme or plan.

．　　．　　．　　．　　．

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2.

Syrax's 97–month sentence consisted of 60 months each on counts 3 (mail fraud) and 4 (wire fraud), and 97 months each on count 25 (interstate transportation of property obtained by fraud) and the information (money laundering), all to be served concurrently. The district court declined to group Syrax's fraud and money laundering counts for sentencing, relying on *United States v. Taylor*, 984 F.2d 298 (9th Cir.1993).

Syrax's contention that his fraud and money laundering counts should have been grouped together under § 3D1.2(d) is foreclosed by *Taylor*, which held that "grouping under section 3D1.2(d) is not appropriate when the guidelines measure harm differently." *Id.* at 303. In *Taylor*, we noted that the offense level under the fraud guideline, § 2F1.1, was determined based on the loss attributable to the scheme, while the money laundering guideline, § 2S1.1, looked at the value of the funds attributable to the scheme. *See id.* Because "the guidelines for wire fraud and money laundering measure harm differently," we held that the district court erred in grouping a dismissed wire fraud count with a monetary transaction count under § 3D1.2(d). *Id.; see also Hanley*, 190 F.3d at 1033–34 (reaffirming the holding in *Taylor* and rejecting the defendants' argument that their wire

---

1. The 1998 version of the Sentencing Guidelines was used in determining Syrax's sentence.

fraud and money laundering counts should have been grouped under § 3D1.2(d)).

Syrax points out that the defendant in *Taylor* was charged with a violation of 18 U.S.C. § 1957, for laundering money for personal use, rather than the so-called "promotion prong" of the money laundering statute, 18 U.S.C. § 1956, under which Syrax was convicted.[2] While this is true, the holding in *Taylor* was based on the fact that the guidelines for wire fraud and money laundering measure harm differently. *See Taylor*, 984 F.2d at 303. The guideline for § 1956, U.S.S.G. § 2S1.1, measures harm in the same manner as the guideline for § 1957, § 2S1.1—that is, the offense level is increased based on the value of the funds. The rationale underlying *Taylor* thus applies whether the defendant is charged under § 1956 or § 1957.

In *United States v. Rose*, 20 F.3d 367 (9th Cir.1994), in which the defendants were charged under § 1956(a)(1)(A)(i), we distinguished *Taylor* in concluding that the district court did not err in grouping the defendant's fraud and money laundering counts. *Rose* drew no distinction between the "promotion" and the "personal use" money laundering statutes; instead, we distinguished *Taylor* based on the fact that, unlike *Rose*, there was complete identity between the laundered and the fraudulently obtained funds. *See id.* at 371–72. Thus, *Rose* does not control here.

Syrax further argues that the fraud and money laundering counts should have been grouped under § 3D1.2(b), rather than (d), a question that was not addressed in *Taylor, Rose,* or *Hanley*. Subsection (d) looks to, *inter alia*, whether the offense level is determined on the basis of the total amount of harm or loss. By contrast, subsection (b) requires grouping when the counts "involve the same victim and two or

more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b). Syrax relies on the fact that he reinvested $1,779,980.95 of the fraudulently-obtained money into the scheme, in arguing that the fraud and the money laundering activities were so closely connected that the victims of the fraud were also the victims of the money laundering.

In order to group under § 3D1.2(b), however, Syrax's offenses must both (1) involve the same victim and (2) be closely connected. *See* U.S.S.G. § 3D1.2(b); *United States v. Lopez*, 104 F.3d 1149, 1150–51 (9th Cir.1997) (discussing the two requirements of § 3D1.2(b)). In *Lopez*, we concluded that the defendant's conspiracy and money laundering convictions satisfied the first requirement because both crimes were "victimless" and the " 'societal interests that are harmed are closely related.' " *See Lopez*, 104 F.3d at 1150 (quoting U.S.S.G. § 3D1.2, cmt. n. 2).

By contrast, Syrax's offenses are not both "victimless crimes." While society is the victim of his money laundering activity, *see id.* at 1150–51, his conviction for fraud involved specific victims. Syrax's offenses therefore do not involve the same victim and so were properly not grouped under § 3D1.2(b). The finding that his fraud and money laundering offenses should not be grouped under § 3D1.2(b) is also in accord with decisions of the Second, Eighth, and Tenth Circuits. In *United States v. Napoli*, 179 F.3d 1 (2d Cir.1999), *cert. denied*, 528 U.S. 1162, 120 S.Ct. 1176, 145 L.Ed.2d 1084 (2000), for example, the Second Circuit addressed whether a defendant's convictions for fraud and for money laundering under § 1956(a)(1)(B) should be grouped together under § 3D1.2(b). Reasoning that "[t]he 'victims' of fraud counts

---

**2.** Section 1956(a)(1)(A)(i) provides that it is a crime to conduct a financial transaction involving the proceeds of a specified unlawful activity "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(A)(i). Section 1957, by

contrast, merely criminalizes engaging in "a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a).

are those persons who have lost money or property as a direct result of the fraud," but that "[t]he 'victim' of money laundering is, by contrast, ordinarily society at large," the court concluded that the defendant's fraud and money laundering counts "involved different harms to different victims" and so could not be grouped under § 3D1.2(b). *Id.* at 7–8; *see also United States v. O'Kane,* 155 F.3d 969, 972 (8th Cir.1998) (concluding that the district court erred in grouping the defendant's fraud and money laundering offenses under § 3D1.2(b) because "[f]raud clearly harms the defrauded ... [b]ut money laundering harms society's interest in discovering and deterring criminal conduct"); *United States v. Kunzman,* 54 F.3d 1522, 1531 (10th Cir.1995) (affirming the district court's decision not to group fraud and money laundering counts under § 3D1.2(b) because the victim of fraud is "the defrauded individual," while the victim of money laundering is society in general (citing *United States v. Johnson,* 971 F.2d 562 (10th Cir.1992))).

Syrax's reliance on out-of-circuit cases that permit grouping of fraud and money laundering offenses is unavailing. These cases are inapposite because they involved grouping under § 3D1.2(d), not (b), and we have already held in *Taylor* that money laundering and fraud are not to be grouped under § 3D1.2(d). *See United States v. Wilson,* 98 F.3d 281, 282–84 (7th Cir.1996) (concluding that for a conviction under § 1956(a)(1)(B)(i), it was error not to group fraud and money laundering counts under § 3D1.2(d) because "the money laundering in this case served to perpetuate the very scheme that produced the laundered funds"); *United States v. Mullens,* 65 F.3d 1560, 1564 (11th Cir. 1995) (affirming the district court's decision to group fraud and money laundering counts under § 3D1.2(d) for a defendant convicted of a ponzi scheme, reasoning that the offenses were "integral cogs in

continuing the scheme. Without the fraud there would have been no funds to launder."); *United States v. Leonard,* 61 F.3d 1181, 1185–86 (5th Cir.1995) (affirming the district court's decision to group offenses because "the money laundering and fraud constituted part of the same continuing common criminal endeavor").[3]

Syrax further argues that, because the laundering of funds was an integral part of his fraud scheme, the fraud victims were also victims of the money laundering. We reject this argument. Although the presentence report did state that Syrax reinvested $1,779,980.95 of the fraudulently obtained money into the scheme, it also stated that he actually bilked victims out of over $4.5 million.

Thus, unlike *Rose,* there is not a complete identity between Syrax's laundered funds and his fraudulently obtained funds. *See Rose,* 20 F.3d at 372.

Under *Taylor,* the district court properly refused to group Syrax's offenses under § 3D1.2(d). Further, we reject his argument that the offenses should have been grouped under § 3D1.2(b) because his fraud and money laundering offenses did not involve the same victims. The district court did not err in refusing to group Syrax's fraud and money laundering offenses in a single group.

## II. Enhancement for Role in the Offense

### A. Supervision of Criminally Responsible Participant

■ Syrax contends that the district court erred in imposing a two-level enhancement under U.S.S.G. § 3B1.1 for his role in the offense, arguing that the evidence failed to show that he supervised a participant in the money laundering scheme. Section 3B1.1(c) provides that a defendant's offense level may be increased

---

**3.** In *Leonard,* the court cited § 3D1.2(d), but its analysis followed § 3D1.2(b) because it examined whether the counts involved the same victim and were tied together by a common criminal objective. *See Leonard,* 61 F.3d at 1185–86.

by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)."[4] The district court stated that it was "very clear" that the enhancement should be applied to Syrax's money laundering count, and so applied it, against the recommendation of the probation office.

■ In order for § 3B1.1(c) to apply, the defendant "must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, cmt. n. 2. "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.* at cmt. n. 1; *see United States v. Anderson,* 942 F.2d 606, 615–16 (9th Cir.1991) (concluding that the person supervised must have been criminally responsible for the commission of the offense), *abrogated on other grounds by Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). The enhancement may be applied if the government "shows by a preponderance of evidence that the defendant exercised some control over others involved in the commission of the offense or [was] responsible for organizing others for the purpose of carrying out the crime." *United States v. Alonso,* 48 F.3d 1536, 1545 (9th Cir.1995) (quoting *United States v. Hoac,* 990 F.2d 1099, 1110 (9th Cir.1993)) (alteration in original). "The preponderance of the evidence standard is met by a showing that the relevant fact is more likely true than not." *United States v. Collins,* 109 F.3d 1413, 1420 (9th Cir.1997).

Because there is no doubt that Syrax was the leader of the criminal activity, the question is whether the person he supervised (his office manager, Gretchen Wilson) was criminally responsible for the commission of the money laundering. The probation officer recommended against the

role enhancement, reasoning that, although "there was a blending of criminal conduct and legitimate employee/employer activity, there is nothing to indicate that the defendant and Wilson agreed to or discussed the activity of laundering money." The officer thus concluded that Wilson was not a criminally responsible participant in the money laundering scheme. The district court noted the probation officer's conclusion, but stated that the officer had "limited" information, and that the court had "other information ... that comes from various different sources and [from] observing different things going on at the trial." The court thus concluded that the enhancement should be applied because "[a]ll of the evidence in this case to me indicates ... that the defendant was the organizer and the leader in this situation and that Wilson 'knew what was going on and she was in it up to her ears.'"

■ The district court's finding that Wilson was a criminally responsible participant is a finding of fact reviewed for clear error. *See Alonso,* 48 F.3d at 1545; *see also United States v. Lopez–Sandoval,* 146 F.3d 712, 716 (9th Cir.1998). Clearly erroneous review is "significantly deferential," requiring that the appellate court accept the district court's findings absent a " 'definite and firm conviction that a mistake has been committed.' " *McMillan v. United States,* 112 F.3d 1040, 1044 (9th Cir. 1997) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust,* 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993)).

Whether or not Wilson was criminally responsible for the money laundering is admittedly a close question. The government argues that Wilson and Sandra Coronado, Syrax's wife, were both knowing participants in the money laundering activity, detailing Wilson's responsibilities, for example, to pay bills, order and pay for

---

4. Section 3B1.1(a) provides for a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise

extensive." The enhancement in subsection (a) was applied to Syrax's wire and mail fraud counts and was not disputed below.

telemarketing leads, determine commissions for salespersons, and keep Syrax informed of the company's financial situation, all the while aware of the fact that the bills were paid with investor funds. As the probation office noted, Wilson's activities could be seen as a "blend[ ] of criminal conduct and legitimate employee/employer activity." Unlike *United States v. Cyphers,* 130 F.3d 1361 (9th Cir. 1997), in which there was specific testimony by the employees that they were aware that the activities were unlawful, Wilson's conduct might be interpreted as merely fulfilling her responsibility as an office manager. *See id.* at 1363.

■ On the other hand, the fact that Wilson pled guilty to one count each of mail fraud and wire fraud supports the inference that, because she was aware of the fraudulent activity, she was aware of the money laundering as well. The district court did not specify what evidence indicated Wilson's knowledge of the money laundering; however, the court did not need to make specific findings of fact in support of an upward role adjustment. *See Lopez–Sandoval,* 146 F.3d at 716. Wilson's knowledge of the fraudulent activity and numerous responsibilities as office manager make it difficult to characterize her as a "mere unknowing facilitator[ ]" of the money laundering. *Cyphers,* 130 F.3d at 1363. A review of the evidence does not leave us with a "definite and firm conviction that a mistake has been committed." We therefore conclude that the district court did not clearly err in finding that Syrax supervised a participant in the money laundering scheme. *McMillan,* 112 F.3d at 1044 (internal quotation marks omitted).

## B. Double Counting

■ Syrax further argues that the enhancement for his role in the offense constituted impermissible double counting. Syrax failed to raise this double-counting argument below; the plain error rule therefore applies.[5] *See* Fed.R.Crim.P. 52(b); *United States v. Garcia–Guizar,* 227 F.3d 1125, 1129–30 (9th Cir.2000). Syrax must show that the district court committed error that was plain and that affected substantial rights, and we will notice the error only if it " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Sager,* 227 F.3d 1138, 1145–46 (9th Cir. 2000) (quoting *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)) (alteration in original).

■ "Impermissible double counting of an enhancement occurs if a guideline provision is used to increase punishment on account of a kind of harm already fully accounted for, though not when the same course of conduct results in two different types of harm or wrongs at two different times." *United States v. Calozza,* 125 F.3d 687, 691 (9th Cir.1997). Double counting is not always impermissible; it is "sometimes authorized and intended by the Sentencing Guidelines when each invocation of the behavior serves a unique purpose under the Guidelines." *United States v. Nagra,* 147 F.3d 875, 883 (9th Cir.1998).

Syrax contends that the application of the two-level enhancement under U.S.S.G. § 3B1.1(c) for his role in the money laundering activity constituted impermissible double counting because he had already received (and did not dispute) the four-level enhancement under § 3B1.1(a) for being the organizer or leader of the fraud activity. Syrax cites *Calozza* in support of his position. *Calozza,* however, is distinguishable.

In *Calozza,* the defendant was convicted of fraud and money laundering. In determining his sentence, the district court ap-

---

5. The record indicates that Syrax argued to the district court that the role enhancement should not apply because of insufficient evidence. The only double-counting argument raised below was regarding the enhancements for mass marketing (U.S.S.G. § 2F1.1(b)(3)) and multiple victims/more than minimal planning (U.S.S.G. § 2F1.1(b)(2)).

plied enhancements for vulnerable victims and abuse of position of trust to both the fraud and the money laundering groups. Although the enhancements "ha[d] no direct bearing" on the money laundering counts, they were properly applied as "relevant conduct" under U.S.S.G. § 1B1.3 in determining the defendant's base offense level. *See Calozza,* 125 F.3d at 690–92. The court held, however, that applying the enhancements to the fraud counts as well constituted impermissible double counting because the effect was "to add prison time twice for exactly the same abuse of trust and vulnerable victims." *Id.* at 692.

Unlike *Calozza,* where the enhancements "applied to [the] fraud *rather than* [the] money laundering conduct," *id.* at 692 n. 1 (emphasis added), the enhancements Syrax received applied to *both* his fraud and money laundering activities. The enhancement for being the organizer or leader of the fraudulent activity was added for Syrax's role in organizing and running Gecko. The Presentence Report stated, "Syrax created Gecko Holdings, a fraudulent business. As part of this business, Syrax employed [six people] as telemarketers and Wilson as an Office Manager. All the telemarketers worked at the direction of Syrax to fraudulently sell shares of Gecko Holdings." The enhancement for Syrax's role in the money laundering activity, however, was for different conduct and so did not involve the same wrong and victim as the fraud activity. *Cf. Calozza,* 125 F.3d at 692 (noting that the enhancements were for the same wrong and same victims). As discussed above, the victim of Syrax's money laundering is not the same as the victims of the fraud, and Syrax's conduct in organizing the fraudulent activity differs from his conduct in leading the money laundering activity. Unlike *Calozza,* where the enhancements for abusing a position of trust and for harming vulnerable victims applied to the fraud but not to the money laundering activity, Syrax's enhancement for his leadership role applies to both his fraud and money laundering offenses. The district court's decision to

apply the enhancement did not constitute plain error.

## CONCLUSION

The district court did not err in failing to group Syrax's fraud and money laundering offenses under either U.S.S.G. § 3D1.2(b) or (d). The district court also did not err in imposing the role enhancement to Syrax's money laundering count. Accordingly, the sentence imposed by the district court is

AFFIRMED.