FILED

OCT 13 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. CC-15-1059-DTaKu |
| SEAN MICHAEL KANTER and KRISTA MARIANNE KANTER, | Bk. No. 12-10689-PC |
| Debtors. | Adv. Proc. No. 13-01114-PC |
| SUZANNE MARTIN ETIHIRI, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| SEAN MICHAEL KANTER; KRISTA MARIANNE KANTER, | |
| Appellees. | |

Argued and Submitted on September 24, 2015
at Malibu, California

Filed - October 13, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter Carroll, Bankruptcy Judge, Presiding

Appearances:    Andrew Edward Smyth appeared for Appellant Suzanne Martin Etihiri; Larry Webb appeared for Appellees Sean Michael Kanter and Krista Marianne Kanter.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

1

Before:  DUNN, TAYLOR, and KURTZ, Bankruptcy Judges.

Following trial in an adversary proceeding which sought both the revocation of chapter 7[2] debtors' discharge and a determination that a debt owed by the debtors was nondischargeable, the bankruptcy court ruled that the plaintiff had failed to meet her burden of proof on each of four claims for relief.  The bankruptcy court entered judgment of dismissal in favor of the debtors.  The plaintiff appealed the bankruptcy court's judgment only as to the claim for relief that the debt was excepted from discharge pursuant to § 523(a)(2)(A).

For the reasons stated below, we AFFIRM the bankruptcy court's judgment dismissing the adversary proceeding.

## I.  FACTUAL BACKGROUND

Sean Michael Kanter and Krista Marianne Kanter filed a chapter 7 petition on February 21, 2012.  After the chapter 7 trustee filed a report of no distribution, the Kanters' discharge was entered and their bankruptcy case was closed on May 29, 2012.

On December 13, 2012, Suzanne Martin ("Ms. Martin"), fka Suzanne Martin Etihiri, filed a complaint against the Kanters in the Superior Court of Santa Barbara, California ("State Court").  In January 2013, the Kanters reopened their bankruptcy case for the purpose of amending their schedules to include Ms. Martin's claim,

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.  All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

which had been omitted from the original bankruptcy documents. The amended schedules were filed in February 2013, and the bankruptcy case was reclosed.

On July 1, 2013, Ms. Martin filed an adversary proceeding seeking a determination that the Kanters owed her a debt that was nondischargeable pursuant to § 523(a)(2)(A).[3] The underlying facts of the dispute are as follow.

In the spring of 2007, the Kanters invested approximately $175,000 to capitalize a business named Bujeco Development Corporation, S.A. ("Bujeco"), which was formed for the purpose of developing Pacifica Village, a real estate condominium development in Costa Rica. Part of the funds were used to purchase the land to be developed. A loan was taken out to finance the balance of the purchase price. Title to the property was placed in Krista Kanter's name, as apparently was required under Costa Rican law.

Krista Kanter was president of Bujeco and a 40% shareholder. Sean Kanter was neither an officer nor a shareholder of Bujeco. Jonathan Glazer, who held a 20% interest in Bujeco through sweat equity rather than a capital contribution, is the other shareholder relevant to the litigation.[4] Mr. Glazer also served as Bujeco's

---

[3] The complaint also alleged claims for relief under § 727(d)(1) (seeking to revoke the discharge entered in the case on the basis that it was obtained by fraud), and §§ 523(a)(4) and (a)(6). Ms. Martin has appealed only the dismissal of the § 523(a)(2)(A) claim.

[4] The other shareholders were Tomer Vardi and Andreas
(continued...)

3

secretary.

Ms. Martin found information about the Pacifica Village development online and, also online, requested additional information about the project. Her questions were answered by a person named Melissa, who invited Ms. Martin to visit the project in person; and Ms. Martin did so.[5]

Ultimately, Ms. Martin decided to purchase a condominium unit to be constructed in the Pacifica Village development. The purchase and sale agreement ("Purchase Agreement") was signed April 19, 2008 by Ms. Martin as buyer and on June 9, 2008, by Ms. Kanter as seller.

The Purchase Agreement contained the schedule for Ms. Martin to make deposits in connection with the purchase. Article Four of the Purchase Agreement provided:

> All and every deposit made by **Buyer**, according to the description above, will be made to and held in an Escrow Account. The Escrow Agent holding the money will be CTCA Escrow, Limitada (CTCA), LandAmerica-Commonwealth Title of Central America and COMMONWEALTH LAND TITLE INSURANCE COMPANY. A copy of the escrow agreement is attached hereto, and is part of the Exhibit C of this agreement. The Exhibit C is signed and accepted by The Parties at The Effective Date.[6]

---

[4](...continued)
Marchevsky, who together held a 40% interest in Bujeco.

[5] Ms. Martin testified she did not recall when during the process of entering into the Purchase Agreement and making deposits she visited the property.

[6] The Land America escrow agreement was Ms. Martin's Exhibit 9 in the proceedings in the bankruptcy court. However, no exhibits to the Purchase Agreement, including Exhibit C which is the escrow agreement, are contained in the excerpts of record submitted by

4

(Emphasis in original.)

The Purchase Agreement required Ms. Martin to make her initial deposit ("Initial Deposit") in the amount of $5,000 by the Effective Date, and subsequent deposits as follow: 30% of the purchase price by the sixteenth business day after the Effective Date, 20% of the purchase price within ten business days after the seller received construction permits from the municipality, 30% of the purchase price when the unit Ms. Martin was purchasing had its "roof up," and the remaining 20% of the purchase price, presumably when the unit had been completed.[7]

Ms. Martin made the Initial Deposit to the escrow account on a date not specified in the record.[8] Shortly thereafter, Ms. Martin contacted Mr. Glazer for the purpose of obtaining a change to the deposit schedule.[9]

_____

[6](...continued)
Ms. Martin.

[7] The Effective Date is a term defined in the first sentence of the Purchase Agreement as the date the Purchase Agreement is entered into. Notably, the Purchase Agreement form specifies the year of the Effective Date as 2007, but the blanks for the month and day were not filled in.

[8] Exhibit 2 in the proceedings in the bankruptcy court was identified as "Confirmation of Domestic Wire Transfer-Proof of Payment $5,040." Again, this exhibit is not contained in the excerpts of record submitted by Ms. Martin.

[9] Article Twelve of the Purchase Agreement provided that communications with respect to the Purchase Agreement were to be made in writing and hand-delivered to the attention of either Mr. Glazer or Mr. Marchevsky.

A revised purchase and sale agreement ("Revised Purchase Agreement") was prepared with an Effective Date of July 17, 2008. Neither Ms. Martin nor anyone on behalf of the seller signed the Revised Purchase Agreement.

Under the Revised Purchase Agreement, the purchase price was decreased slightly from $149,000 to $147,500. Ms. Martin was required to deposit 30% of the revised purchase price on the Effective Date of the Revised Purchase Agreement. The Revised Purchase Agreement provided that "[a]ll and every deposit made by Buyer, according to the description above, will be made to Bejuco Development S.A. Payment can be done to the following bank accounts. . . ." The Revised Purchase Agreement provided two alternative bank accounts into which the deposits could be made. The first was to an account in the name of Magma Software S.A.; the second was to an account in Mr. Glazer's name.

Ms. Martin deposited $44,700 ("Second Deposit") to Mr. Glazer's account by wire transfer which posted on September 9, 2008. Ms. Martin testified that she made the Second Deposit only after she had received an assurance, in the form of an e-mail message dated August 3, 2008, from Mr. Glazer stating that all deposits Ms. Martin made toward the purchase of the condominium unit were fully refundable if the developer did not complete the project.

The Kanters returned to the United States sometime in the fall of 2009, and sometime in the spring of 2010, Ms. Kanter divested herself of any interest in the Pacifica Village development by selling her interest in Bejuco to Tomer Vardi for $25,000.

6

Ultimately, the Pacifica Village development was never completed. At some point, apparently in 2012, Ms. Martin received a refund of the Initial Deposit from the escrow account. However, she never received a refund of the Second Deposit she had wired to Mr. Glazer's bank account.

The bankruptcy court determined that Ms. Martin had not satisfied her burden of proof because she failed to establish that either of the Kanters had made a fraudulent representation to her in connection with either the Purchase Agreement or the Revised Purchase Agreement. This determination was supported by the bankruptcy court's findings. First, Ms. Martin never spoke with either of the Kanters at any time; all of her communications were with either Melissa or Mr. Glazer. Second, Mr. Kanter never held any ownership interest in Bejuco, nor was he an officer or director. Finally, Bejuco was a corporation, not a partnership as asserted by Ms. Martin. The bankruptcy court stated that it was unaware of any provision of Costa Rican law which would impute the representation of one employee of a corporation to another.

The bankruptcy court entered a judgment dismissing all claims for relief stated in Ms. Martin's complaint. This appeal followed.

## II.  JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

Whether the bankruptcy court's factual determination that Bejuco was a Costa Rica corporation was clearly erroneous.

7

Whether the bankruptcy court erred when it determined that Ms. Martin had failed to carry her burden of proof on her claim for relief under § 523(a)(2)(A).

## IV. STANDARDS OF REVIEW

We review our own jurisdiction, including questions of mootness, de novo. Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs), 339 F.3d 782, 787 (9th Cir. 2003); Ellis v. Yu (In re Ellis), 523 B.R. 673, 677 (9th Cir. BAP 2014).

Whether a claim is excepted from discharge presents mixed issues of law and fact, which we review de novo. Diamond v. Kolcum (In re Diamond), 285 F.3d 822, 826 (9th Cir. 2002) (citing Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1037 (9th Cir. 2001)). See also Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 382 (9th Cir. BAP 2011). Thus, in reviewing a bankruptcy court's determination of an exception to discharge claim, we review its findings of fact for clear error and its conclusions of law de novo. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009). As relevant in this appeal, whether there has been proof of an essential element of § 523(a)(2)(A) is a factual determination reviewed for clear error. Am. Express Travel Related Servs. Co., Inc. v. Vinhnee (In re Vee Vinhnee), 336 B.R. 437, 442-43 (9th Cir. BAP 2005).

"Clearly erroneous review is significantly deferential, requiring that the appellate court accept the [trial] court's findings absent a definite and firm conviction that a mistake has

8

been made." United States v. Syrax, 235 F.3d 422, 427 (9th Cir. 2000). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003). The deference owed to the bankruptcy court is heightened where its choice is based on the credibility of live witnesses. Rule 8013. A factual finding is clearly erroneous, however, if, after examining the evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, NC, 470 U.S. 564, 573 (1985) (internal citation omitted).

We may affirm the bankruptcy court's orders on any basis supported by the record. See ASARCO, LLC v. Union Pac. R. Co., 765 F.3d 999, 1004 (9th Cir. 2014); Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

**V.  DISCUSSION**

A.    Section 523(a)(3)(B).

Our review of this appeal begins with an evaluation as to whether the bankruptcy court erred in determining that Ms. Martin's § 523(a)(2)(A) claim for relief should be dismissed as untimely.

It is undisputed that the deadline for bringing a complaint to determine if a debt owed by the Kanters was nondischargeable based on alleged fraud generally was May 25, 2012. It also is undisputed that the § 523(a)(2)(A) complaint was not filed until July 1, 2013. Finally, it is undisputed that Ms. Martin was not included in the Kanters' bankruptcy schedules until February 25, 2013.

Section 523(c)(1) provides:

9

Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2) . . . of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2) . . . of subsection (a) of this section.

Section 523(a)(3)(B) in turn provides:

A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
. . .
(3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit --
. . .
(B) if such debt is of a kind specified in paragraph (2) . . . of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under [such paragraph], **unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]**

(Emphasis added.)

Taking these provisions into account, the bankruptcy court determined that Ms. Martin did not meet the threshold requirement of proof that would allow her to file the § 523(a)(2)(A) complaint after the May 25, 2012, deadline; in particular, she presented no evidence that she did not have actual knowledge of the Kanters' bankruptcy case.

. . . I believe it's the Plaintiff's burden to put on evidence that there was no knowledge of the bankruptcy within which -- within a time in which to file, or the deadline to file a complaint to determine the dischargeability of a debt within the time to file a timely complaint to fall within the scope of Section 523(a)(3)(B).

I reviewed the joint pretrial stipulation. I didn't see a

10

> stipulation to that effect, and there was no evidence put on by the plaintiff with regard to knowledge.
>
> I believe that under the circumstances that fact alone would be sufficient to find for the Defendants on the claim under Section 523(a)(3)(B) . . . .

Hr'g Tr., October 9, 2014, at 121:1-13.

We note that Ms. Martin did not assert § 523(a)(3)(B) as a claim for relief upon which she based her complaint. Nor did she need to. "[Section] 523(a)(3) does not provide an independent basis for a nondischargeability determination." 4 Collier on Bankruptcy ¶ 523.09[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev.). "In effect, the penalty for failure to schedule such a debt is not nondischargeability but is the loss of the 60-day limitations period applicable in [§ 523(a)(2)] determination actions." Id.

We further note that the Kanters did not raise timeliness as an affirmative defense against the complaint. The parties all appeared to assume that Ms. Martin could file the complaint when she did because she had not been scheduled as a creditor in the case prior to the expiration of the deadline for filing the § 523(a)(2)(A) complaint.

To the extent the bankruptcy court dismissed the complaint based purely on the failure of evidence to support Ms. Martin's entitlement to file a § 523(a)(2)(A) complaint after the May 25, 2012 deadline, the dismissal was error, because the bankruptcy court misallocated the burden of proof with respect to timeliness. The Kanters did not assert the missed deadline or laches as affirmative defenses, and therefore waived any timeliness issue as to

11

§ 523(a)(3)(B). Had they done so, the burden would have been on them to prove both an unreasonable delay by the plaintiff and prejudice to them. See Beaty v. Selinger (In re Beaty), 306 F.3d 914, 926-29 (9th Cir. 2002)(a party asserting laches as an affirmative defense in § 523(a)(3)(B) cases must prove both lack of diligence by the party against whom the defense is asserted and prejudice to the party asserting the defense).

However, any error in conjunction with the bankruptcy court's determination that dismissal was warranted based on § 523(a)(3)(B) is harmless in and of itself, where the bankruptcy court properly determined that to prevail on her complaint, Ms. Martin also was required to establish a claim for relief under § 523(a)(2)(A).

B.   Section 523(a)(2)(A).

In a nondischargeability action under § 523(a), the creditor has the burden of proving all the elements of its claim by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Exceptions to discharge are strictly construed against an objecting creditor and in favor of the debtor to effectuate the fresh start policies under the Bankruptcy Code. Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992).

Under § 523(a)(2)(A), a debtor is not discharged in bankruptcy from any debt obtained by "false pretenses, a false representation, or actual fraud." The creditor bears the burden under the preponderance of the evidence standard of demonstrating each of the following five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or

12

deceptiveness of the representation or omission; (3) an intent to deceive; (4) the creditor's justifiable reliance on the representation or conduct; and (5) damage to the creditor proximately caused by reliance on the debtor's representations or conduct. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010); Citibank v. Eashai (In re Eashai), 87 F.3d 1082, 1086 (9th Cir. 1996).

In the appeal before us, the bankruptcy court ruled that Ms. Martin failed to meet her burden of proof that either of the Kanters made any misrepresentation for the purpose of establishing the first element of fraud.

1. There is no evidence of a direct misrepresentation.

It is undisputed in the record that Ms. Martin never spoke to either of the Kanters in conjunction with the transaction. Thus, neither made any representation to her upon which liability can be based.

The limited direct involvement of Krista Kanter was in signing the Purchase Agreement. To the extent this might in some possible factual scenario constitute a representation, as suggested by Ms. Martin in this appeal, it certainly was not one which in any sense proximately caused Ms. Martin damage, where the only funds paid by Ms. Martin in conjunction with the Purchase Agreement were returned to her from the escrow account.

It is undisputed that Ms. Martin negotiated the Revised Purchase Agreement only with Mr. Glazer. It further is undisputed that the Revised Purchase Agreement never was signed by anyone, and

13

in particular, was not signed by either of the Kanters. We reject Ms. Martin's argument on appeal that the mere presence at the end of the Revised Purchase Agreement of a line with a place for Krista Kanter's signature is sufficient to constitute a representation by Krista Kanter. Neither the Revised Purchase Agreement, which provided that deposits could be made to Mr. Glazer's personal account, nor Mr. Glazer's express statements that amounts paid to his account would be refunded if Ms. Martin did not receive her condominium unit, can be said to have been a representation by either Mr. Kanter or Ms. Kanter.

    2.   <u>There was no partnership which might provide a basis to impute Mr. Glazer's alleged fraud to the Kanters</u>.

Recognizing the absence of a direct representation from the Kanters to Ms. Martin, Ms. Martin asserted that because the Kanters and Mr. Glazer were "partners," Mr. Glazer's fraud could be attributed to them.

Ms. Martin contends that the Kanters stipulated in the Joint Pre-Trial Stipulation ("Joint Stipulation") that they were partners in the business. Indeed, the Kanters injected substantial confusion into the record on the issue of whether they were "partners" with Mr. Glazer. This is reflected in the Joint Stipulation:

> The following facts are admitted and require no proof:
> . . .
> 3. Defendants SEAN MICHAEL KANTER and KRISTA MARIANNE KANTER were partners of the Bejuco Development company which was a housing development company developing real estate in Costa Rica.
> . . .
> 17. Mr. Glazer was a representative and business partner of the Defendants.

14

Likewise, this is represented in the trial testimony, wherein both the Kanters and their counsel repeatedly refer to the business as a partnership.

To add to the confusion, Ms. Martin's counsel referred to the business enterprise alternatively as the partnership or the company. For instance, Ms. Martin's counsel asked Mr. Kanter: "So, did you and your wife give Mr. Glazer authority to commit the partnership to contracts?" Hr'g Tr., October 9, 2014, at 21:14-15. This question was met by an objection with respect to foundation. After colloquy, Ms. Martin's counsel restated the question and followed it with other similar questions: "In your involvement with this project were you aware of who had authority – authority to bind the company in a contract?" Hr'g Tr., October 9, 2014, at 21:23-25. "Did your wife have authority to bind this company in contracts?" Hr'g Tr., October 9, 2014, at 22:2-3. "Does her signature signify that the company is bound to this presales – purchase and sales agreement?" Hr'g Tr., October 9, 2014, at 22:19-20.

At the end of the day, the bankruptcy court found proof in the documentary evidence that Bujeco was a corporation. "Exhibit 3 reveals that this is a corporation, not a partnership, and I cannot find any authority for attributing a representation by one employee of the corporation to another." Hr'g Tr., October 9, 2014, at 122:20-23.

The index of the trial transcript describes Exhibit 3 as "Share Transfer Agreement - Transfer of Krista Kanter's Shares." Ms. Martin asserts on appeal that Exhibit 3 shows that the Kanters

15

and Mr. Glazer were partners. Unfortunately, Ms. Martin did not include Exhibit 3 in the record on appeal. We therefore cannot review it to determine whether the bankruptcy court's interpretation of it was error.

As we have stated many times, the burden of presenting a proper record to the appellate court is on the appellant. Kritt v. Kritt (In re Kritt), 190 B.R. 382, 387 (9th Cir. BAP 1995). The failure to provide an adequate record may be grounds for affirmance, when, as here, an appellant challenges a factual finding. Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman), 126 B.R. 63, 68 (9th Cir. BAP 1991).

    3.    The record does not support imputing Mr. Glazer's alleged fraud to the Kanters even if Bujeco was a partnership.

However, even if Exhibit 3 would refute the bankruptcy court's finding that Bejuco was a corporation, not a partnership, we still would affirm the bankruptcy court's judgment of dismissal. We explored at depth the issue of imputed fraud for purposes of § 523(a)(2)(A) in Sachan v. Huh (In re Huh), 506 B.R. 257 (9th Cir. BAP 2014) (en banc). The record and Ms. Martin's briefs on appeal show that Ms. Martin was not aware of the Huh standard for imputing fraud. Ms. Martin asserts she was required to prove only that Mr. Glazer was the Kanters' partner and that Mr. Glazer committed fraud. We need not reach the issue of whether she proved either of these issues, because the record contains nothing that would support a finding by the bankruptcy court that the Kanters' knew or should have known of Mr. Glazer's fraud as is required under the Huh

16

standard.[10]

## VI.  CONCLUSION

Ms. Martin did not satisfy her burden to prove that the Kanters made a fraudulent representation in connection with the Second Deposit.  Nor did she provide evidence upon which Mr. Glazer's alleged fraud could be imputed to the Kanters under the <u>Huh</u> standard.  Accordingly, the bankruptcy court's dismissal of Ms. Martin's complaint was not error, and we AFFIRM.

---

[10]  In addition, there is nothing in the record to establish that Mr. Kanter was an officer or had any ownership interest in Bejuco.